IRVING SMITH *vs.* SIMEON M. JONES ET AL.

First Judicial District, Hartford, March Term, 1925.
WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

If a finding of a Compensation Commissioner be in reality a conclusion drawn from subordinate facts, it may be properly assigned as an error in law.

The word "pay" in the statutory definition of an employer as one "using the services of another for pay," means compensation, whether it be monetary or otherwise.

The plaintiff and defendant owned adjoining dairy farms and, by mutual agreement, each assisted the other in the seasonal occupations of filling their silos and icehouses, the one assisting being under the direction and supervision of the other. In the season of 1923, it was agreed that defendant's silo should be filled first and, for that purpose, the plaintiff loaned the defendant his tractor and took charge of the mechanical operation of the cutter and blower. On the sixth day of the work, his hand was accidentally caught in the cutter and he thus sustained the injuries for which he made the present claim for compensation. The trial court sustained the Commissioner's conclusions that there were mutual contracts of employment, based upon compensation in labor and services, and that the plaintiff was entitled to an award. *Held* that these conclusions were legally and logically justified by the subordinate facts.

Argued March 3d—decided May 12th, 1925.

APPEAL by the defendants from a finding and award of the Compensation Commissioner of the fifth district in favor of the plaintiff, taken to the Superior Court in Litchfield County and tried to the court, *Peasley, J.;* judgment rendered for plaintiff, and appeal by defendants. *No error.*

*Lawrence A. Howard,* for the appellants (defendants).

*J. Howard Roberts,* for the appellee (plaintiff).

CURTIS, J. This appeal relates to certain claimed errors of the trial court in failing to hold, from the subordinate facts found by the commissioner, (1) that the plaintiff had no contract of employment with the defendant Jones, and that the relation of employer and employee did not exist between them, and hence that they were not subject to the Compensation Act; (2) that the parties (Smith and Jones) were engaged in a joint enterprise as to which no relation of employer and employee arose. A claim was also made that the court erred in not correcting paragraph twelve of the finding.

Paragraph twelve was a conclusion of the commissioner from the subordinate facts and is properly attacked as an error in law, and as such is amply covered by the above claims of error. *Palumbo* v. *Fuller Co.*, 99 Conn. 353, 356, 122 Atl. 63.

The subordinate facts as found by the commissioner are that Smith (the claimant) and Jones were dairy farmers owning adjoining farms; that both used silos to store food for their cattle. In connection with the silo, an ensilage cutter and blower were employed, run by gas-engines. Mr. Smith used an engine of twenty-seven horse-power on a Moline tractor, which could be run independently of the tractor, and Mr. Jones used an eight horse-power gas-engine. What is spoken of herein as a "blower," is a tube or pipe containing a motor driven fan. This tube receives the chopped up corn as it comes from the cutter and the chopped corn is then driven by air pressure through the tube into the top part of the silo, where it falls by gravity into the silo and is there packed tight so as to keep until needed for feeding stock. The blower and cutter are substantially parts of one machine, and they are a type of machinery in common and ordinary use among dairy farmers.

The raising of corn for ensilage purposes and cutting the same and storing it in a silo is an important part of a dairy farmer's ordinary business.

The silo is so constructed as to be practically air tight, and the green corn, known as ensilage, undergoes a slight fermentation when stored, but if properly packed and stored is one of the few practically green fodders available for dairy farmers in the winter season, and this food is in common use among dairy farmers and constitutes one of the best feeds for dairy cattle.

By mutual agreement between Smith and Jones, they assisted each other in filling silos and icehouses. In the season of 1923, Jones' ensilage corn was farther advanced and matured than that of Smith, and it was accordingly arranged that Jones' silo should be first filled. The work began September 5th, 1923. On the 6th the claimant was asked to bring over his tractor, which had, as above stated, a much higher powered engine, so that when an extra gang of men was put on there would be power enough to cut corn rapidly, and keep them all profitably busy. On Thursday, Friday and Saturday the work continued. On Monday afternoon the claimant was again working for Jones and on Tuesday, the 11th. At about five o'clock on Tuesday, while Smith was feeding the cutter, his hand accidentally got into the machinery and was seriously mangled.

During all the time that the claimant was engaged in this work for the respondent, the respondent directed his activities, told him what to do and when to stop. The plaintiff was engaged in running. the mechanical operation.

A combination of ensilage cutter and blower with a gasoline-engine attached constitutes a complex piece of mechanism, which neither the ordinary mechanic

nor ordinary laborer would be competent to manage. Special skill and experience are needed in this kind of work, and such services are customarily worth in excess of $36 per week.

As a result of his injury, the plaintiff is unable to do much of his ordinary farm work, and was totally disabled from September 12th to December 20th, 1923, and lost the equivalent of seventy-five per cent of the use of his left hand, and incurred certain expenses for medical service and hospital care which are not disputed.

Under the subordinate facts, the court held that the commissioner legally and logically found that "the claimant Smith, when injured, had a contract of service and employment with the respondent (Jones) and that each of these parties were subject to the Compensation Act."

The question presented is whether the finding as to the mutual agreement of Smith and Jones, that they should assist each other in filling silos and icehouses, coupled with the work done by Smith in pursuance of this agreement, is a basis for a logical and legal conclusion that there was a contract of service and employment between them when the injury occurred. They had agreed to assist each other to fill their respective silos, their compensation for working one for the other was work to be done by the other. These were mutual agreements creating a valid contract for service, and enforceable at law in case of a breach. The fact that the services were to be compensated for by labor and not money does not make the agreement any the less a contract for service.

The Compensation Act defines an employer as "any person, corporation, firm . . . using the services of another for pay." Public Acts of 1919, Chap. 142, § 18. Pay here means compensation. *Aisenberg* v. *Adams*

*Co., Inc.,* 95 Conn. 419, 423, 111 Atl. 591; *Roush* v. *Heffelbower,* 225 Mich. 664, 196 N. W. 185.

The respondents• claim that the only conclusion legally and logically to be drawn from the mutual agreement of the parties, is that of a joint enterprise entered upon, which did not create the relation of employer and employee, or a social affair in the nature of a social barn raising or corn husking: Joint enterprise as used by the appellant means something in the nature of a partnership.

The agreement between Smith and Jones was not in the nature of a partnership or one made for social diversion. It was an agreement for employing service, compensation to be made by similar service.

There is no error.

In this opinion the other judges concurred.