[Civ. No. 3312.   Third Appellate District.—May 16, 1927.]

## WILLIAM GABEL et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—ADJOINING RANCH OWNERS—CONTRACT TO RENDER SERVICES WITHOUT MONETARY COMPENSATION—INJURY RECEIVED IN FIGHTING FIRE—COMPENSABILITY OF.—Where two ranch owners of adjoining ranches agreed to render services to each other without monetary compensation in the operation or preservation of their respective farms, and both carried compensation insurance, largely for the protection of each other, and one of them was ordered by the other to fight a fire on the premises of the latter and while so doing was injured, such injuries were compensable under the Workmen's Compensation Act as being sustained in the course of employment and while the relation of master and servant existed between the two ranch owners; and the friendship of the parties did not preclude a recovery by the injured ranch owner.

[2] ID.—MASTER AND SERVANT—LIABILITY FOR SERVICES.—In order to create a liability, the facts must bring the relationship of the parties within the provisions of sections 1965 and 2009 of the Civil Code; a contract of employment, either express or implied, must exist; and services voluntarily and gratuitously performed create no liability.

[3] ID.—SERVICES—CONSIDERATION—CONTRACTS.—A pecuniary consideration for services is not necessary, as one may compensate for services by means of any property of value, or even by a return of services pursuant to agreement.

[4] ID.—FINDINGS—EVIDENCE—CERTIORARI.—Where the findings of the Industrial Accident Commission are supported by substantial testimony, even though there may be a conflict of evidence, the findings will be upheld.

[5] ID. — RELATIONSHIP AND FRIENDSHIP — EVIDENCE — EMPLOYER AND EMPLOYEE.—Relationship and friendship are circumstances to be

2.   Who is "workman" within meaning of Workmen's Compensation Act, notes, Ann. Cas. 1913C, 28; Ann. Cas. 1916B, 793; Ann. Cas. 1918B, 704.   Who is an employee within meaning of act, notes, L. R. A. 1916A, 115, 246; L. R. A. 1917D, 145; L. R. A. 1918F, 201.   See, also, 27 Cal. Jur. 278; 28 R. C. L. 760.

3.   See 27 Cal. Jur. 278.

4.   See 27 Cal. Jur. 578; 28 R. C. L. 828.

5.   Review of facts on appeal under Workmen's Compensation Act, notes, Ann. Cas. 1916B, 475; Ann. Cas. 1918B, 647. See, also, 27 Cal. Jur. 281; 28 R. C. L. 765.   Right and extent of review of findings of commission, note, L. R. A. 1917D, 186.

considered in determining whether a contract of employment in fact existed; and friendship is often an inducing motive for employment.

(1) Workmen's Compensation Acts, C. J., p. 48, n. 35. (3) Workmen's Compensation Acts, C. J., p. 47, n. 34. (4) Workmen's Compensation Acts, C. J., p. 123, n. 41. (5) Workmen's Compensation Acts, C. J., p. 115, n. 37.

PROCEEDING in Certiorari to review an order of the Industrial Accident Commission awarding compensation for injuries. Award affirmed.

The facts are stated in the opinion of the court.

Frank J. Creede for Petitioners.

G. C. Faulkner for Respondents.

THOMPSON, (R. L.), J., *pro tem.*—This is a writ of review to annul an award made by the Industrial Accident Commission against petitioner Gabel for injuries sustained by respondent Bach while fighting a grass fire on petitioner's premises under his direction and alleged employment.

[1] The petitioner Gabel and the respondent Bach were farmers, friends, and neighbors, who owned and operated adjoining stock ranches in the vicinity of Oakdale, California. For fifteen years they were partners in a farming enterprise. Some three or four years prior to the accident they dissolved partnership, but retained a specific agreement continuing on down through the years to the time of the accident, to exchange farm labor, serving each other in this capacity upon request and whenever required. There was no monetary compensation for services, but it was mutually agreed that they would equalize their service as nearly as possible, the assistance of one balancing the services of the other. The nature of this exchange work included everything which arose in the operation of their respective farms, including the repairing of buildings and fences, caring for the stock, and general farm work. Each of these neighbors relied almost solely upon the other for farm assistance and rarely ever employed any other help. Both of them by mutual agreement carried compensation insurance, largely for the protection of each other. Mr.

Bach testified: "I took out the insurance policy to protect Mr. Gabel, and any other hired help I had. These policies were taken out to protect one another; that is the biggest work we have, we do most of the work for each other."

Mr. Gabel virtually corroborated this statement. Besides owning adjoining farms, the petitioner and respondent were next-door neighbors in Oakdale. On July 5, 1926, while petitioner and respondent were at their respective homes in Oakdale, a fire-alarm was heard, and upon inquiry at the fire department it was learned that a dangerous grass fire was burning a few miles distant, near Knights Ferry and about a mile northerly from their ranches. The rural fire-truck immediately started for the fire. Petitioner and respondent rode out together in another car. They found the fire burning fiercely and spreading rapidly in a southerly direction toward their ranches. Both ranches were in the course of the fire, but respondent's ranch was situated about a mile beyond petitioner's farm. In spite of the efforts of the fire-fighters, consisting of half a dozen men with the aid of the rural fire-engine, the fire jumped the highway and spread until it covered a front of approximately a mile in extent. Becoming alarmed for the safety of his buildings, the petitioner Gabel went to respondent Bach and said: "Go on the truck, and go over to my place and try to save my buildings and feed there." Bach left the position where he was then engaged in fighting the fire and went over to the Gabel ranch in the neighborhood of the house and was engaged in trying to control the flames by the use of a hose. The fire apparatus became disabled; the pump stopped working and the water ceased flowing. The other men ran away, but Bach was surrounded by dense smoke and flames, and in attempting to make his escape was compelled to pass through the burning grass and flames. His face, hands, neck, head, and feet were badly burned. He was taken to a hospital for treatment and was completely incapacitated for several weeks.

Upon application the Industrial Accident Commission made an award of four dollars per day wages during the period of disability, and found that Bach sustained his injuries in the course of his employment for Gabel as a ranch hand. This finding and award is challenged by petitioners on the theory that the relation of master and servant did

not exist between the parties with respect to the services which were being performed at the particular time the injuries were sustained, and on the contrary assert that respondent was burned while he was engaged in the performance of voluntary services.

The only question presented upon this writ is whether the facts above recited constituted an employment of respondent Bach so as to make petitioners liable under the Workmen's Compensation Act [Stats. 1917, p. 831].

[2] In order to create a liability, the facts must bring the relationship of the parties within the provisions of sections 1965 and 2009 of the Civil Code. A contract of employment, either express or implied, must exist. Services voluntarily and gratuitously performed create no liability. (27 Cal. Jur. 278, sec. 19.) [3] But a pecuniary consideration for services is not necessary. One may compensate for services by means of any property of value, or even by a return of services pursuant to agreement. (*Tucker* v. *Cooper*, 172 Cal. 663 [158 Pac. 181]; *Rector* v. *Stumpff*, 11 Industrial Acc. Com. 155; *Smith* v. *Jones*, 102 Conn. 471 [43 A. L. R. 952, 129 Atl. 50].) In the case of *Tucker* v. *Cooper* there was an agreement between farmers, who were cousins, to exchange service in baling hay for the respective parties for a particular season. In *Rector* v. *Stumpff*, above cited, two draymen agreed to assist each other whenever it was necessary in the moving of pianos. In *Smith* v. *Jones*, *supra*, there was a continuing mutual agreement between adjoining dairy farmers to assist each other in cutting ensilage and filling their silos which were used to store food for stock. In these cases it was held that the agreement to exchange services was a sufficient consideration to bind the owner of the property as an employer, while the one performing the service was considered, at that particular time, the employee. Such agreements may be made to exchange labor of a similar character for a definite, specific employment, such as filling the silos referred to, or they may contemplate an exchange of work for a particular season, as in the hay-baling case above cited. But there appears no good reason to distinguish such limited employment from a more general contract to exchange farm labor of any and all character, even though the term of employment may extend indefinitely,

provided the evidence satisfactorily establishes the intent of the parties to create such a contract.

In the instant case the Industrial Accident Commission has found that the contract was made, and that the respondent Bach was injured in the course of his employment. [4] "Where the findings are supported by substantial testimony, even though there may be a conflict of evidence, the findings will be upheld." (27 Cal. Jur. 578, sec. 218; *White* v. *Industrial Acc. Com.*, 192 Cal. 16 [218 Pac. 414].)

There was, however, no substantial conflict of evidence in this case. Both parties agree as to the terms of their contract to exchange labor, as to their purpose in taking out insurance to protect each other, and as to the circumstances of the particular employment which resulted in the injuries sustained. As it was said in the case of *Tucker* v. *Cooper*, above cited, the facts warrant the conclusion that Gabel not only definitely directed the respondent Bach what to do, but that both parties assumed that this particular service was pursuant to the specific directions and under the control of petitioner Gabel. "Take the truck and go down there and save my buildings," he instructed the respondent. These specific directions refute the theory of a voluntary service. (*County of Monterey* v. *Industrial Acc. Com.*, 199 Cal. 221 [47 A. L. R. 359, 248 Pac. 912].) It cannot be fairly said that Bach volunteered this service merely as a friend and neighbor. Nor can it be said that he did this specific thing with the sole selfish motive of protecting his own property. His property was situated a mile beyond the Gabel property; the fire was burning along a line more than a mile in extent, and, as the evidence proves, Bach could have worked for the protection of his own property alone, with equal beneficial results anywhere along the line of fire. It is apparent that he left his general work of fighting the fire, at the urgent request of Gabel, and went over to protect his buildings. Both parties testify that they assumed these services were to be performed pursuant to their general contract of an exchange of labor.

A more serious question may be whether this special emergency service came within the terms of their agreement to exchange work about their respective farms. Of course, fighting fire is not what would be termed farm work. But it must be recalled that these neighbors had been friends and

partners, but were now operating their respective stock ranches independently, although they still retained a mutual interest in the welfare of each other. Under such circumstances they agreed to exchange work about their farms whenever it was required. The terms of the contract were not limited to "farm work." It was testified that the agreement included "any general work, any kind of work that comes up." Among other classes of work specified was "remodeling and repairing buildings, fences, corrals—grading, dehorning and delivering cattle at the railway station and marketing of stock."

It seems evident that the contract of employment was quite general and included almost any service for the operation, maintenance, or preservation of their respective farms and the improvements which they contained. If a regular hired man, or handy man about a farm, should be injured in fighting a fire which started in his employer's dwelling-house or barn upon the premises where he was engaged to work, it seems entirely reasonable to hold that such injuries would be sustained in the course of his employment.

Nor should the friendship of the parties preclude a recovery. [5] Relationship and friendship are circumstances to be considered in determining whether a contract of employment in fact existed. The relationship of husband and wife, or parent and minor child, might raise a presumption against an alleged contract of employment, but it would be a violent, harsh, and unnatural construction to even presume that the friendship of parties would be in conflict with the theory of an employment. In truth, friendship is often an inducing motive for employment. (27 Cal. Jur. 281, sec. 20.)

We are of the opinion that there is substantial evidence to support the finding that the respondent was injured in the course of his employment.

The award is affirmed.

Finch, P. J., and Plummer, J., concurred.