THE STATE OF OHIO, APPELLANT, *v.* IDEN, D. B. A. IDEN
BEAUTY PARLOR, APPELLEE.

66

(No. 635—Decided September 22, 1942.)

*Mr. Thomas J. Herbert,* attorney general, *Mr. John M. Woy* and *Mr. J. Donald Kincaid,* for appellant.
*Messrs. Pugh, Knapp & Miller,* for appellee.
*Mr. William Levelle, amicus curiae.*

SHERICK, J.   This appeal questions the constitutionality of certain features of the Ohio Unemployment Compensation Law as amended in 1939, Sections 1345-1 to 1346-5, inclusive, General Code. There is also drawn in question the interpretation to be placed upon certain words and phrases used in the Unemployment Compensation Act.   We must and do approach the queries made with the purpose of determining the applicability of the questioned enactment to the facts in evidence, without regard to our personal opinions of what the law ought to be or what we think of its purpose and effect.

The action is one instituted by the Attorney General on behalf of the state upon findings made by the Bureau of Unemployment Compensation against the appellee to recover contributions, together with interest thereon, covering four certain periods from April of 1938 to March of 1941.   Upon trial the state introduced these findings in evidence and thereby made a *prima facie* case.   The appellee answered and defended upon the theory that as of September 1, 1938, he was thereafter not amenable to the Unemployment.

Compensation Act for the reason that he was no longer an employer of employees, but stood in relation to his prior employees as a lessor to them as lessees. This the state by reply denied.

The cause was submitted to the court without the intervention of a jury, which decided the issues in appellee's favor. It is from this finding and judgment that the state appeals upon questions of law. It is conceded in open court that appellee interposed no defense to the findings made which cover the first two quarters of the year 1938. It is agreed that the trial court inadvertently overlooked this fact. It is conceded that the state was entitled to judgment in its favor covering the first eight months. It follows that this portion of the judgment must be modified. The balance of the judgment is claimed by the state to be contrary to law.

The pertinent proven facts are as follows:

From the year 1932 to September of 1938, appellee, R. V. Iden, owned and operated a beauty parlor in Zanesville. During this period he employed from eight to twelve operators, who worked and were paid upon a commission basis. From 1936, the effective date of the act, to April 1, 1938, Iden contributed to the unemployment compensation fund. As of September 1, 1938, Iden entered into like separate written lease agreements with each of his erstwhile employees; whereby he leased to each a certain numbered booth for a term of two years. Each operator was to pay as rent a certain percent of her gross weekly income at the end of each week. A specified amount was to be paid appellee out of certain priced permanents. In addition to the booth all equipment was to be furnished by the lessor and its use leased to the operators. Iden agreed to furnish all heat, light, gas, water, telephone and janitor services and supplies. Lessees were

to procure and pay for all required licenses. It was covenanted that either party to a lease might terminate it on 15 days' notice, and if a lessee defaulted in any covenant, the lessor might resume possession.

The evidence establishes that Iden was the only one who had a shop license as required by the Ohio law. Some of the operators had operator's licenses, some had manager's licenses; most did not. The law requires that every manager of a shop must have such a license. Iden had a representative present at all times who took care of the desk telephone and cash register. When calls for appointments came in, this representative assigned the customer's time and work to the operator requested. If requests were not made the representative assigned whichever operator she chose to do the service. All work slips and money were taken to the representative; sometimes by the operator, but generally by the customer. The moneys were deposited by Iden and his representatives in the name of Iden Beauty Parlor. At the end of each week the amount due each operator was computed and paid to her. The work hours were from 9 a. m. to 6 p. m. Operators generally gave notice of time of departure and return.

The operators were not confined to their particular booths. There was a special facial booth. There was a special place provided for giving shampoos, and a special place for giving permanents. These three places were used by all operators. As noted, Iden furnished all equipment, lotions and supplies, except some operators had their own combs and manicure sets. There was practically little difference in the management and operation of the beauty parlor after the leases were entered into, except that perhaps the operators had more freedom of movement. They received a percentage of the price of work done as they

had in the past. All advertising was done by Iden in the name of the Iden Beauty Parlor. The operators were not named. The prices charged for work done were practically uniform. When charge accounts were made, Iden's representative passed upon them, and if accepted, were assumed by Iden, and the operators paid whether the account was collected or not.

It is evidenced that the lease plan was proposed by Iden to relieve himself of social security, workmen's compensation, unemployment compensation, and minimum wage requirements and contributions that are prescribed under the various provisions of the respective acts.

It does not appear from the opinion of the trial court that the matter was therein decided upon constitutional grounds, but upon the theory that "the preponderance of all the evidence shows that the defendant was not an employer * * * under Section 1345-1, General Code," but be that fact as it may, if the Unemployment Compensation Act is unconstitutional, the trial court reached the proper conclusion. The appellee so contends. He urges in general terms that the state act contravenes the powers granted by the 14th Amendment to the federal Constitution. He says that he is deprived of his property, and his contracts impaired, "without due process of law."

Is Iden deprived of his property without due process of law? Nearly every possible phase of a like complaint was passed upon by the United States Supreme Court in *Carmichael* v. *Southern Coal & Coke Co.,* 301 U. S., 495, 81 L. Ed., 1245, 57 S. Ct., 868, wherein Mr. Justice Stone, pointed out that the Unemployment Compensation Act of Alabama, which is like unto our own, is an exercise of the state's taxing power, and its validity is determinable upon "constitutional principles applicable to state taxation."

Clearly the contributions exacted by the various state unemployment compensation acts are excise taxes, which state legislatures may impose upon a particular class, exempting others, for the benefit of the general welfare, and which the highest court in the land has for many years repeatedly said did not infringe upon constitutional limitations. Older well recognized instances are found in taxation of corporations, which have no children, for maintenance of the common school system, the encouragement of agriculture, the aiding of injured employees and their dependents by the workmen's compensation acts, the present income tax laws, and many others of ancient vintage. We urge counsel to examine carefully this authority. It will disclose that it makes little or no difference whether such contributions are paid into the general treasury or into specific funds and thereafter distributed by administrative officers among those of the public whom the law was intended to aid. The act before us does not infringe upon the federal Constitution.

Does the act impair Iden's contracts of lease? Clearly it does not. It in no way affects his lease arrangements. What it does say is that if your operators are in "employment" then you are to be taxed for the benefit of the general welfare of all who are in "employment." It is upon the same principle that workmen's compensation laws operate. Contracts of employment are not impaired, but are recognized. The state merely says that, as a privilege of doing business, one, as an employer of labor, must contribute towards the hazard of injury or unemployment of all who are in employment; and thereby promote the general welfare.

Is the Ohio act contra to the provisions of Section 34, Article II of the state Constitution? Our answer is no. It is certain that Ohio, from the adoption of its

first Constitution, has always been concerned with the general welfare of its citizens. But it was not until 1912 that the people expressly enlarged its scope. They then recognized that a particular class of its citizenry was entitled to specific consideration, and they proceeded to say in order to avoid future questioning that "laws may be passed * * * providing for the comfort, health, safety and general welfare of all employees; * * *." Its purpose and intent was not to create a rule that had been nonexistent, but to allay all doubt on the right of the Legislature to enact subsequent legislation respecting those who were employed by others.

The claimed constitutional inhibition advanced by the appellee is predicated upon the particular wording of Section 1345-1 (c), General Code, which reads:

" 'Employment' means service, * * * performed for remuneration under any contract of hire, written or oral, express or implied * * *."

At no place within the act is the word "employee" used. It deals exclusively with those under "employment." It is urged that the words are not synonymous, that "employment" is a much broader word than "employee" and that when the Legislature used the former it attempted to enlarge upon the powers granted unto it, and that it exceeded its powers. It is asserted that the word "employees" used in Section 34 of Article II of the Constitution had at the time of its adoption a well recognized and accepted meaning which the Legislature might not enlarge upon, and that when it did attempt to do so, it produced an unconstitutional act.

Appellee states in effect that under the common law the legal conception of the term "employee" is found to exist in the relationships of master and servant and principal and agent. It is true that in the field of

tort liability, the term "employee" had acquired and does now embrace an accepted legal understanding well known to employers and the bar. But we are of opinion that the people understood the term in the constitutional provision in a broader sense. It is significant that the word "all" precedes the word "employees." Not just those who might be so designated and found in a negligence action. In fact, anyone who labors for another and is compensated by his employer for so doing is an employee and is in employment. The constitutional term "employees" standing alone describes the individuals. The statutory term "employment" rather describes the station or situation in which an "employee" finds himself. Clearly the purpose of Section 34 of Article II was not to define the word "employees" but to empower the Legislature to pass laws that would promote the general welfare of employees by improving their working conditions; in other words, their "employment." It is our judgment that the Legislature attempted to do this very thing. It did not exceed its powers in so doing.

Appellee says that *Coviello* v. *Industrial Commission*, 129 Ohio St., 589, 196 N. E., 661, is complete authority for his position of unconstitutionality. We do not think so. The court therein states in its beginning that the sole question before it was whether a relationship of employer and employee existed within the terms of the Workmen's Compensation Act. Not within the terms of the common law. It recognized that the act might otherwise define terms which must be followed. It did define the term "employee" for the purposes of the act. It is well understood that for one purpose a term may be defined to mean a certain thing; but for another purpose it may be given a different and equally distinct meaning. Hence it cannot

follow that what is held in a workmen's compensation case applying that law, must be followed in an unemployment compensation case which is dependent upon the provisions of a different act.

Coming now to consider the facts in issue, Section 1345-1 (c-D), General Code (118 Ohio Laws, 259, 721), must be examined. It provides, that:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the administrator that (i) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact, and (ii) such service is outside the usual course of the business for which such service is performed, and (iii) such individual is customarily engaged in an independently established trade, occupation, profession, or business."

Subsection "f" of 1345-1, General Code (118 Ohio Laws, 259, 721), is also pertinent. It prescribes, that:

" 'Remuneration' means all compensation payable for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash."

These two portions of the act, in conjunction with like facts, have been under consideration in several jurisdictions which, with almost complete unanimity, have held that the leasing of space in beauty parlors and barber shops was resorted to for the evident purpose of avoiding payment of excise taxes. The scheme repeatedly has been held to be a subterfuge for that purpose.

From the evidence before us it is clear that practically the only difference in operation before and after the leases were entered into was more freedom of movement by the operators. It was still Iden's shop.

It was so advertised and operated. Customers did not know otherwise. They called and paid the shop, not particular operators. Iden extended credits. Operators used more than their particular booths. Their use of such had to be regulated and controlled and turns taken. Business, not specially requested to be done by a particular operator, was assigned by Iden. He furnished all lotions and supplies, and the operators had no choice. He furnished all tools save combs. He had only a shop license. He could terminate a lease in 15 days. He could terminate it sooner in case of default and relet the booth. Operators could not dispose of their leases. Their remuneration was commissions. Iden's rentals were not fixed amounts but percentages of pay for services performed by the operators.

With these facts in mind, we look to Section 1345-1 (c-D), General Code, hereinbefore set forth. It says that ''Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the administrator that'' such is not true. This phrasing discloses the broad purpose of the act to aid all employees who served for remuneration. It established a *prima facie* case and cast the burden upon an employer to show three certain things to exist before he shall be relieved from contribution.

First. He must show that the individual (the operator) was ''free from control or direction over the performance of such services, both under his contract of service and in fact.'' This, the defendant has failed to show. It is said by quite a few courts of last resort that situations like the present one create a rebuttable presumption of control. The present facts hardly need such a presumption. Iden's business simply could

not be carried on without control. If all his operators failed to keep the specified hours of labor, Iden simply had no shop. He had to regulate the use by the operators of the facial, shampoo, and permanent booths and his waiting room. If there had been a dozen independent bosses there could have been no order in his business. If some control exists, an individual is not free from control.

Second. Iden had to show that his operators' services were "outside the usual course of the business for which such service is performed." The undisputed facts are that the operators performed no services outside of Iden's shop and all services were performed in the course of Iden's business, and conclusively establish that Iden failed to prove the second criteria.

Third. Iden was required to prove that his operators were "customarily engaged in an independently established trade, occupation, profession, or business." The facts in evidence prove the direct contrary of this test to be true. It is our judgment that Iden has failed to establish any one of the three requirements. He must establish all before he is exempt from contribution.

If precedent is searched for, such may be found in *McDermott* v. *State,* 196 Wash., 261, 82 P. (2d), 568; *State* v. *Goessman,* 13 Wash. (2d), 598, 126 P. (2d), 201; *Unemployment Compensation Commission* v. *Harvey,* 179 Va., 202, 18 S. E. (2d), 390; *Tharp* v. *Unemployment Compensation Commission,* 57 Wyo., 486, 121 P. (2d), 172; *Young* v. *Bureau of Unemployment Com.,* 63 Ga. App., 130, 10 S. E. (2d), 412; *Unemployment Compensation Com.* v. *Jefferson Standard Life Ins. Co.,* 215 N. C., 479, 2 S. E. (2d), 584.

The judgment of the trial court must be and is reversed *in toto,* and this court coming now to render

76

the judgment which the trial court should have entered, enters final judgment for the appellant.

*Judgment reversed.*

LEMERT, P. J., and MONTGOMERY, J., concur.