FAULKNER, APPELLANT, *v.*
MAYFIELD, ADMR., ET AL.,
APPELLEES.

(No. 1851—Decided
March 25, 1988.)

*David R. Spears,* for appellant.
*Anthony J. Celebrezze, Jr.,* attorney general, and *James A. Barnes,* for appellee James L. Mayfield, Administrator, Bureau of Workers' Compensation.
*Charles Cooper,* for appellee city of Ironton.

GREY, P.J. This is an appeal from the Court of Common Pleas of Lawrence County. The appellant appeals from an administrative body that denied his participation in the Workers' Compensation Fund. We reverse and remand.

The appellant, Rusty Faulkner, was found guilty of driving an automobile under the influence of alcohol, a misdemeanor. The Lawrence County Municipal Court sentenced him to a jail sentence and fined him three hundred fifty dollars. Since Faulkner could not pay his fine, he entered a work program to satisfy the debt.

The court assigned Faulkner to chop wood for a private individual. He suffered a serious injury, amputation of part of his right index finger, which required extensive medical attention. Faulkner applied for workers' compensation benefits, but was denied participation in the fund. The district hearing officer found:

"After full consideration of the issue it is the finding of the District Hearing Officer that the claimant was not an employee of the named employer, since the claimant was not hired to be an employee of the Municipal Court, and there never was a contract of hire, either expressed or implied. Rather, the claimant was ordered by the Court to serve time in jail and pay a fine as a result of his criminal activities; and in his failure to pay the fine, the Court ordered that he participate in work detail under the direction of the Bailiff to discharge his criminal obligations, fines, and court costs.

"This District Hearing Officer further finds that during the time of the injury, the claimant was still under the direction and order of the Court for his criminal wrongdoings, and that a certain amount of time had to be served in the work detail to discharge his fines and court costs. The claimant was injured while serving his time on the work detail, and at no time did the

Municipal Court hire the claimant to be an employee of the Court.

"It is therefore ordered that this claim be *disallowed* in its entirety." (Emphasis *sic.*)

After the regional board of review affirmed the district hearing officer's findings, Faulkner appealed. The Court of Common Pleas of Lawrence County granted summary judgment for the Industrial Commission. Faulkner filed a timely appeal.

We will consider Faulkner's assignments of error jointly.

"First Assignment of Error:

"The trial court erred by granting summary judgment concerning the issue of whether there was an employment relationship between appellant and appellee, City of Ironton, Ohio.

"Second Assignment of Error:

"The court erred in determining as a manner of law that no employment relationship existed."

Since the trial court granted summary judgment, our task on review is to see if reasonable minds could come to but one conclusion, that Rusty Faulkner's working off his fine by chopping wood did not make him eligible to participate under R.C. Chapter 4123 in the Workers' Compensation Fund.

Appellees have cited two unreported opinions which deny workers' compensation participation to penitentiary inmates, *Tyner* v. *State* (Mar. 31, 1981), Marion App. No. 9-80-46, unreported; *Schwartz* v. *Ohio Dept. of Admin. Serv.* (June 4, 1981), Richland App. No. CA-1977, unreported. The basic thrust of these opinions is that inmates who work in prison are not employees under R.C. 4123.01 because there is no contractual relationship. Since a prisoner does not have the freedom to contract while incarcerated, there is no consent, consideration or mutuality, the ordinary components of a contract. *Tyner, supra,* at 4,

following *Watson* v. *Indus. Comm.* (1966), 100 Ariz. 327, 414 P. 2d 144.

This case can be distinguished from those two unreported cases. First, Faulkner was not a prisoner deprived of liberty or under the direction and control of a prison superintendent. Second, these two cases rely entirely on employee-employer principles, a traditional common-law master-servant analysis. The traditional employee is, of course, included in workers' compensation coverage, but the statute provides broader coverage than the common-law master-servant relationship.

Section 34, Article II of the Ohio Constitution provides:

"Welfare of employes.

"Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power. (Adopted September 3, 1912.)"

In *State* v. *Iden* (1942), 71 Ohio App. 65, 25 O.O. 404, 47 N.E. 2d 907, the court discussed that constitutional provision, and the scope of the legislature's power to carry it into effect:

"But we are of [the] opinion that the people understood the term in the constitutional provision in a broader sense. It is significant that the word 'all' precedes the word 'employees.' Not just those who might be so designated and found in a negligence action. In fact, anyone who labors for another and is compensated by his employer for so doing is an employee and is in employment. The constitutional term 'employees' standing alone describes the individuals. The statutory term 'employment' rather describes the station or situation in which an 'employee' finds himself. Clearly the purpose of Section 34 of Article II was not to define the word 'employees' but to empower the Legislature to pass laws

that would promote the general welfare of employees by improving their working conditions; in other words, their 'employment.' " *Id.* at 72, 25 O.O. at 407, 47 N.E. 2d at 910-911.

R.C. 4123.01(A)(1)(a) reads:

"(A)(1) 'employee,' 'workman,' or 'operative' means:

"(a) Every person in the service of the state, or of any county, municipal corporation, township, or school district therein, including regular members of lawfully constituted police and fire departments of municipal corporations and townships, whether paid or volunteer, and wherever serving within the state or on temporary assignment outside thereof, and executive officers of boards of education, under any appointment or contract of hire, express or implied, oral or written, including any elected official of the state, or of any county, municipal corporation, or township, or members of boards of education[.] * * *"

The language in R.C. 4123.01 uses broad universal phrasing, such as "[e]*very* person in the service of the state, or of *any* county * * *" and "[e]*very* * * * firm * * *." " 'Injury' includes *any* injury * * *." The exceptions to R.C. 4123.01(A) are quite narrow, excluding only ministers, *Victory Baptist Temple, Inc.* v. *Indus. Comm.* (1982), 2 Ohio App. 3d 418, 2 OBR 510, 442 N.E. 2d 819, and the officers of a family farm corporation, and even these employees may be covered if the employer elects to do so. The clear legislative intent is to make workers' compensation coverage broad enough to include the entire range of employment relations people might enter into. There are no specific statutory exclusions from participation in the fund for persons who are injured while working off a fine, nor has the issue presented in this case ever been considered in Ohio.

The variety of work people do is as various as people themselves. While the large majority of people work regularly scheduled jobs for regular pay, there is a small fraction who do not fit the mold. Nonetheless, accidents happen to the people engaged in these minor kinds of employment, and the costs and disabilities resulting from these accidents are just the same as in regular employment. The underlying theory of workers' compensation is that the risk and costs of on-the-job accidents be spread, as equitably as possible, to all employees and all employers.

Not every injury is compensable under workers' compensation law, of course, and most of the cases have dealt with close issues such as we have here, but the cases have established some criteria. Payment is one criterion for determining the employee-employer relationship. In *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589, 3 O.O. 9, 196 N.E. 661, a case dealing with the leasing of cabs by cab drivers, the court noted that payment was a *sine qua non* of the employment relationship. Another basic standard is the right to hire and fire and to control the person's work. This standard had been regularly used for years, *e.g., Case* v. *Indus. Comm.* (1939), 62 Ohio App. 219, 15 O.O. 540, 23 N.E. 2d 652, and more recently in *Foran* v. *Fisher Foods, Inc.* (1985), 17 Ohio St. 3d 193, 17 OBR 430, 478 N.E. 2d 998, where the court said, at 194, 17 OBR at 431-432, 478 N.E. 2d at 999:

"A review of prior case law establishes that one who exercises day-to-day control over the employee will be considered as the employer for purposes of workers' compensation."

Faulkner was sent out by the court to a private individual to chop wood.

Faulkner was paid a set rate of $30 per day, although all income was used to pay off the fine. He worked at the

direction of the court bailiff who controlled and directed when and where he was to work. Faulkner meets all the usual tests for employment. The question presented to this court is whether he should be denied participation in the Workers' Compensation Fund on public policy grounds.

Though many jurisdictions would deny participation in a workers' compensation fund for injuries sustained while working in a prison or correctional facility, several states are beginning to consider prisoners employees if loaned out to a state agency or private concern. In *Pruitt* v. *Workmen's Comp. Appeals Bd.* (1968), 261 Cal. App. 2d 546, 68 Cal. Rptr. 12, a county inmate was sent to work for and under the control of a third party. The court found he was an employee for purposes of participating in the workers' compensation fund, and that the amount of the inmate's salary was immaterial.

In *Johnson* v. *Indus. Comm.* (1960), 88 Ariz. 354, 356 P. 2d 1021, a county jail inmate was loaned out to work for a private corporation. The private corporation had control over the inmate's work. The inmate was not paid in cash for his services, but was given food, lodging and time off his sentence. The court held that a contract for hire was made when the private corporation established control over the inmate. The fact the inmate was not paid with money did not change his employment contract. "The payment of money is not the only basis for a contract of employment. A man may work for other benefits, including an agreement by the employer to render some special service for the employee." *Johansen* v. *Gray* (1954), 283 App. Div. 647, 649, 130 N.Y. Supp. 2d 35, 37.

In *Clinton* v. *White Crow* (Okla. 1971), 488 P. 2d 1232, the opposite reasoning was used. An inmate who worked for the city collecting garbage to discharge his fine was held not to be an employee under the workers' compensation law. The inmate could not participate in the workers' compensation fund since he did not receive wages for his work. Since the inmate was volunteering his time, no contract for hire existed. "[W]e have found nothing in the Act and its amendments which indicates any intention of the Legislature to give compensation insurance protection to prisoners who perform services, whether for the city, county or state." *Id.* at 1234. *Clinton* differs from Ohio law since the definition of "employee" in R.C. 4123.01 is universal, whereas the Oklahoma law defines "employee" more narrowly.

In *Abrams* v. *Madison Cty. Highway Dept.* (Tenn. 1973), 495 S.W. 2d 539, a county inmate who was injured while working in the county garage was not entitled to receive workers' compensation benefits because he was not under a contract for hire. The inmate was required to work as a condition of his sentence. Since his work was not of his volition, no contractual relationship existed.

In general, in states where misdemeanor offenders have been able to receive workers' compensation, the courts have so held because the employers had control over them. In states where participation was denied, it was denied on a contract-for-hire theory.

Faulkner performed work to discharge a debt. There are several cases where an injured worker was held to participate in a workers' compensation fund where he was not paid wages but worked to discharge a debt. *Smith* v. *Jones* (1925), 102 Conn. 471, 129 A. 50, 43 A.L.R. 952, held a mutual agreement between two farmers to fill each other's silos and icehouses was a valid contract for services. The labor given in exchange for pay was held to be sufficient consideration to imply a con-

tract for hire. In reciprocal-services situations where a person works for another in order to discharge a debt, "[t]he essential feature is the presence of an understanding that the services are being performed pursuant to an implied contract for exchange of labor." 1C Larson, The Law of Workmen's Compensation (1986), Section 47.43(b).

*Alexander* v. *J. E. Hixson & Sons Funeral Home* (La. App. 1950), 44 So. 2d 487, runs counter to *Smith.* A florist and funeral director, in appreciation for referring business to each other, would help each other in their businesses when work accumulated. The court held that the business relationship was reciprocal. When the florist injured himself removing a vault lid, he was not entitled to receive workers' compensation because the funeral director had no control over the florist's work. The florist had the ability to refuse work when asked; hence, the funeral director did not control his work.

While a review of the authorities in other jurisdictions may be expositive, they are not dispositive of the issue before this court. The issue is not one of public policy, but rather one of statutory construction; that is, should R.C. Chapter 4123 be construed to deny workers' compensation participation to workers who are injured while working to pay off a fine? We find that such workers are covered.

In construing any statute, the object is to reach the result the legislature intended, R.C. 1.47, by giving the language of the statute its ordinary meaning, R.C. 1.42, and to avoid interpretations which are a denial of equal protection of law. *State* v. *Meyer* (1983), 14 Ohio App. 3d 69, 14 OBR 81, 470 N.E. 2d 156.

Using these standards, we turn to consider R.C. Chapter 4123. As noted above, appellant is not expressly ex-

cluded from coverage, and impliedly is included in the broad language of the statute. Coverage is available to workers in circumstances similar to appellant's. A county may purchase workers' compensation coverage for juveniles in a work rehabilitation program. 1982 Ohio Atty. Gen. Ops. No. 82-045. This is particularly relevant in light of R.C. 1901.024(B), a special code section dealing only with Hamilton and Lawrence Counties, which provides that:

"(B) The board of county commissioners of Lawrence county shall pay all of the costs of operation of the Lawrence county municipal court. * * *"

This provision should be read in conjunction with R.C. 2947.14 and 2947.15. R.C. 2947.14(A) and (B) state that no indigent person may be imprisoned for failure to pay a fine. Part (D) states that if a person is incarcerated for failure to pay a fine, he receives credit at the rate of thirty dollars a day for each day of incarceration. R.C. 2947.15 states the proceeds of the labor of county prisoners are to be paid into the county treasury. R.C. 2947.19 states the county must provide for the maintenance of its prisoners. Under these statutes, an indigent defendant cannot be incarcerated for failure to pay a fine, but if he goes to jail and sits around, the county must keep him at its expense, and his fine is reduced at the rate of thirty dollars per day. The county loses money all around. Viewed from this perspective, the program of the Lawrence County Municipal Court, whereby defendants are not incarcerated and work to pay off their fines, makes good sense. The county reduces its costs and it increases income, while the defendant avoids the indignity of jail and is provided with remunerative employment.

But accidents happen to people in this kind of employment just as in others. Should these programs be ex-

empted from the ordinary rules of employment? We think not. R.C. 4101.11 states that an employee shall be furnished with a safe place to work and ordinary safety equipment. A welder should not work without a face shield or gloves. A person should not operate a grinding wheel without safety glasses. A program which provided safety equipment to regular employees but denied it to people working off their fines would be regarded as intolerably discriminatory. Yet, if an accident happens in spite of the safety equipment, it is just as discriminatory to allow regular employees workers' compensation coverage but to deny it to the others.

We must also consider the question of equal protection of the law. In *State, ex rel. Nyitray,* v. *Indus. Comm.* (1983), 2 Ohio St. 3d 173, 2 OBR 715, 443 N.E. 2d 962, the Supreme Court stated at 175, 2 OBR at 717, 443 N.E. 2d at 964:

"The limitations placed upon governmental action by the Equal Protection Clauses are essentially the same. See *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [30 O.O. 2d 491]; *State, ex rel. Struble,* v. *Davis* (1937), 132 Ohio St. 555 [8 O.O. 552]. Equal protection of the laws requires the existence of reasonable grounds for making a distinction between those within and those outside a designated class. *State* v. *Buckley* (1968), 16 Ohio St. 2d 128 [45 O.O. 2d 469], paragraph three of the syllabus; *Porter* v. *Oberlin, supra,* paragraph two of the syllabus. The 'reasonableness' of a statutory classification is dependent upon the purpose of the Act. *Carrington* v. *Rash* (1965), 380 U.S. 89, 93; *McLaughlin* v. *Florida* (1964), 379 U.S. 184, 191."

We can find no legitimate or reasonable state purpose in making a distinction between workers who work for regular wages, and workers who are working off a fine according to a set pay scale. Accidents will happen to both kinds of workers, and no reason can be advanced as to why one class of accident victims is covered by workers' compensation while the other is not.

There is another equal protection consideration, one that makes denial of participation especially pernicious. The option of working off the fine is most likely to be used by persons on the lower end of the socio-economic scale, *i.e.,* people who are poor or unemployed. These people are least able to afford the costs of medical treatment for on-the-job injuries and most likely to be deprived of their ability to make a living in the future if they are physically disabled. An amputation as we have in this case is particularly disabling to a person who does non-skilled physical labor. A physical disability may continue for life, long after the crime and the fine are forgotten.

A classification based on wealth is constitutionally suspect. *Walker* v. *Stokes* (1975), 45 Ohio App. 2d 275, 74 O.O. 2d 402, 344 N.E. 2d 159. See, also, *In re Jackson* (1971), 26 Ohio St. 2d 51, 55 O.O. 2d 45, 268 N.E. 2d 812, which cites and follows *Williams* v. *Illinois* (1970), 399 U.S. 235. People who do not have the money to pay off their fines can be described, almost by definition, as poor. While the option of working off the fine is available to most defendants, as a practical matter only those who can find economic advantage in working at thirty dollars per day will select that option.

It should be remembered here that a statute does not violate the Equal Protection Clause because it is not all-embracing, or because it does not correct all evils. *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, 45 O.O. 2d 469, 243 N.E. 2d 66. A statute may be drafted which does not include every possible member of a class; rather, the legislature may exercise considerable discretion in drawing its distinctions. Para-

graph two of the syllabus in *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143, 30 O.O. 2d 491, 205 N.E. 2d 363, holds:

"Legislation must apply alike to all persons within a class, and reasonable grounds must exist for making a distinction between those within and those without a designated class. Within the limits of these restrictive rules, a legislative body has a wide measure of discretion."

Arguably, a provision in R.C. Chapter 4123 denying participation to defendants working off their fines might, in spite of its suspect effect on poor people, be upheld.

However, a suspect classification within R.C. Chapter 4123 is not the issue here. The language of the statute mandates workers' compensation coverage for all workers, except for the two minor exceptions noted above. The question is: Did the Industrial Commission's narrow interpretation of the very broad language of the statute create a suspect class? We think it has. By establishing the program for working off fines, the Lawrence County Municipal Court created a new kind of employment relationship, or at least one not ordinarily seen before. This kind of innovation should not be weakened or destroyed by the interjection of an administrative interpretation which creates a constitutionally suspect classification.

One final point which must be included in our opinion is the matter of costs. We begin by noting that costs of the accidents do not go away by administrative fiat or court decision. The costs will either be borne entirely by the injured individual, or spread equitably among all workers and employers under the workers' compensation system. Since R.C. Chapter 4123 mandates that all workers be covered, if a court elects to adopt a program where defendants can work off their fines, the court must also obtain workers' compensation coverage and pay workers' compensation premiums. See 1982 Ohio Atty. Gen. Ops. No. 82-045, *supra*.

The costs of these premiums will not go away either, and they must be paid by someone. A municipal court will no doubt have to make some adjustment in the level of compensation allowed to defendants working off their fines just as any other employer includes the costs of workers' compensation premiums in calculating the value of an employee's services.

Based on the foregoing, assignments of error one and two are well-taken, and the judgment of the trial court is reversed. Since the trial court granted summary judgment solely on the issue of defendant's employee status, this case is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs separately.

ABELE, J., dissents.

STEPHENSON, J., concurring. I concur in the judgment reversing the entry of summary judgment in favor of appellees and remanding the cause to the court below for further proceedings, but would add the following.

On March 26, 1985, appellant filed an application for payment of workers' compensation and medical benefits, listing appellee city of Ironton as his employer and stating the date of his accident as January 8, 1985. On November 6, 1985, a district hearing officer of the Industrial Commission of Ohio denied appellant's claim on the basis that there was no express or implied contract of hire. This decision was affirmed by the regional board of review and further appeal therefrom was de-

nied. On July 31, 1986, appellant filed a notice of appeal pursuant to R.C. 4123.519.

On August 26, 1986, appellant filed a petition and complaint in the court below. Appellees filed an answer and a motion for summary judgment. On January 15, 1987, appellant filed a memorandum contra appellees' motion for summary judgment and attached an affidavit wherein he stated, in pertinent part, as follows. In December 1984, appellant was convicted in the Ironton Municipal Court of driving while intoxicated and was sentenced to three days in jail and fined the sum of $375. Appellant served the three-day jail sentence and was given the option by the Ironton Municipal Court to pay the $375 fine or to work under the direction of the Ironton Municipal Court bailiff at the rate of $30 per day until the fine was completely paid.

Appellant elected to work off the fine for the reason that it would be difficult for him to earn $30 per day doing other work. On January 8, 1985, appellant was directed by the bailiff to report to township trustee Donald Klaiber's residence and was directed to cut firewood. Appellant's finger was caught in the wood splitter, causing a portion of his finger to be amputated. On February 9, 1987, the court below granted appellees' motion for summary judgment, finding no genuine issue as to any material fact and, further, that "there was no employer/ employee relationship between the Plaintiff and the Defendant, City of Ironton."

Civ. R. 56(C) provides, in pertinent part, as follows:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

R.C. 4123.01(A)(1)(a) provides that an employee for purposes of the Workers' Compensation Act includes every person in the service of a municipal corporation under any appointment or contract of hire, express or implied, oral or written. Under the scheme of workers' compensation law, an injured workman is not entitled to compensation when, at the time of the injury, the relation of employer and employee did not exist, or if the workman was not under an appointment or contract of hire. *Coviello* v. *Indus. Comm.* (1935), 129 Ohio St. 589, 3 O.O. 9, 196 N.E. 661, paragraphs one and three of the syllabus; *Indus. Comm.* v. *Bateman* (1933), 126 Ohio St. 279, 185 N.E. 50, paragraph one of the syllabus; *Acklin Stamping Co.* v. *Kutz* (1918), 98 Ohio St. 61, 120 N.E. 229, 14 A.L.R. 812.

Accordingly, the dispositive issue herein is whether there is a genuine issue of fact as to the presence of an express or implied contract of hire between appellant and appellee city of Ironton. Convicts and prisoners, by judicial decision, by statute, or sometimes by both, have usually been denied compensation for injuries sustained in connection with work done within the prison, even when some kind of reward attended their exer-

tions, with the reason usually given being that such a convict cannot and does not make a true contract of hire with the authorities by whom he is confined in that the inducements which might be held out to him, in the form of extra food or even money, are in no sense consideration for an enforceable contract of hire. 1C Larson, The Law of Workmen's Compensation (1986), Section 47.31(a), at 8-299. This state has followed the general rule denying workers' compensation participation to penitentiary inmates by case law, *Tyner* and *Schwartz, supra.*

The same result may follow even if there appears to be some element of voluntary choice on the part of the prisoner, if the appearance of free choice is belied by the presence of a residual right of compulsion. Larson, *supra,* Section 47.31(c), at 8-303; *Scott* v. *City of Hobbs* (1961), 69 N.M. 330, 366 P. 2d 854. In the case at bar, appellant was not an incarcerated prisoner in that he had already served his period of incarceration, appellant could not be imprisoned for failure to pay the fine if he was unable to pay it, see, *e.g.,* R.C. 2947.14, and the release signed by appellant prior to his injury was void pursuant to R.C. 4123.80. See, *e.g., Vavrek* v. *Republic Steel Corp.* (1979), 65 Ohio App. 2d 17, 19 O.O. 3d 11, 413 N.E. 2d 1233. Therefore, in that appellant was not an inmate, the cases cited by appellees are distinguishable and there is no statutory provision explicitly precluding him from participation in the fund. For the foregoing reasons, there remains a genuine issue of fact as to whether appellant voluntarily entered into an express or implied contract of hire.

Furthermore, in modern times, even the general rule denying compensation to inmates has come under attack in that "[h]owever little value one may assign to the rights of a prisoner during his confinement, one should never forget that, in most instances, he will not always be a prisoner, and the permanent partial or total disability which he acquires in prison will create the same social problem after he returns to civil life as it would if the injury occurred while he was free." *Larson, supra,* Section 47.31(e), at 8-307 to 8-308; see, also, *Morales* v. *Worker's Comp. Appeals Bd.* (1986), 186 Cal. App. 3d 283, 230 Cal. Rptr. 575.

However, the majority opinion herein expands the discussion to include an analysis of constitutional equal protection, asserting that a classification based on wealth is "constitutionally suspect," an assertion that would require a strict scrutiny analysis. Initially, I would refrain from such constitutional discussion in that the failure to raise at the trial court level the issue of constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure and, therefore, need not be heard for the first time on appeal. *State* v. *Awan* (1986), 22 Ohio St. 3d 120, 22 OBR 199, 489 N.E. 2d 277, syllabus; *Clarington* v. *Althan* (1930), 122 Ohio St. 608, 10 Ohio Law Abs. 414, 174 N.E. 251. Unlike the cases cited by the opinion, see, *e.g., Meyer, supra,* appellant herein did not raise the equal protection issue below and thereby arguably waived its consideration.

Moreover, none of the cases cited in the majority opinion for the proposition that a classification based on wealth is *per se* constitutionally suspect, *Walker, supra; Jackson, supra; Williams, supra;* supports a conclusion of *per se* unconstitutionality. Rather, it is clear under these authorities that a classification based on wealth is *not* inherently constitutionally suspect. *San Antonio Independent School Dist.* v. *Rodriguez* (1973), 411 U.S. 1. The Supreme Court of the

United States has not held that fines must be structured to reflect each person's ability to pay in order to avoid disproportionate burdens, and sentencing judges may consider the defendant's ability to pay, but in such circumstances are guided by sound judicial discretion rather than by constitutional mandate. *Id.* at 22. In the case at bar, there has been no evidence adduced regarding appellant's ability to pay the fine. Indeed, appellant's affidavit suggests that he could have chosen alternative employment in order to secure the necessary funds.

Additionally, I would emphasize that the Attorney General's opinion cited in the majority opinion for the holding that courts have a mandatory duty to obtain workers' compensation coverage, 1982 Ohio Atty. Gen. Ops. No. 82-045, only states that a county *may* contract with the Industrial Commission pursuant to R.C. 4123.03 to provide workers' compensation coverage for juvenile offenders participating in a county-operated rehabilitation program. Notwithstanding this, in that I agree that there remains a genuine issue of material fact with respect to the absence or presence of an expess or implied contract of hire, I concur in the reversal of the entry of summary judgment herein.