For the reasons assigned, the judgment appealed from is affirmed.

**21 So.2d 229**

**LANGLEY v. FINDLEY et al.**

**In re LANGLEY.**

**No. 37398.**

Dec. 11, 1944.

Rehearing Denied Feb. 19, 1945.

Booth & Lockard, of Shreveport, for applicant.

Hussey & Smith and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for respondents.

PONDER, Justice.

The plaintiff, Mrs. Annie Langley, brought suit against W. W. Findley and his insurer, Associated Indemnity Corporation, seeking to recover compensation in the amount of $20 per week for a period of 300 weeks for the death of her husband, Isom J. Langley, and, in the alternative, the sum of $15,300 under the provisions of Article 2315 of the Revised Civil Code.

On trial, the lower court gave judgment awarding the plaintiff compensation in the amount of $11.70 per week for a period of 300 weeks. On appeal, the Court of Appeal for the Second Circuit annulled the judgment of the lower court and dismissed the plaintiff's suit. On application to this Court, the plaintiff was granted review. The matter has now been submitted for our determination.

The facts as found by the Court of Appeal, 19 So.2d 908, are as follows:

"W. W. Findley, defendant, purchased an oil well in Caddo Parish, which had ceased to produce. He desired to test it for production and through his agent, O. O. Gilbert, effected an agreement with Isom J. Langley, husband of the plaintiff, whereby Langley obligated himself for the consideration of $1,000 to clean out the well and set four inch liner at a depth of 2,430 feet, unless work was stopped by Gilbert at a lesser depth. It was thought that the well could again be made to produce at a depth of not more than 2,430 feet. Langley was obligated to furnish all material, machinery and labor necessary to discharge his part of the contract. When the well had been cleaned to the depth of 2,394 feet or thereabout, a strata of gumbo was encountered which could not be penetrated with the bit then being used. To attach an efficient bit required the withdrawal from the well of the long string of tubing or drill stem. Gilbert and Langley discussed the situation and it was decided by Gilbert to then make a test for production, with the understanding that if unsuccessful, Langley would continue to clean the well to the agreed depth of 2,430 feet. The liner was set on Sunday, August 2, 1942. Langley then withdrew his machinery and labor and Gilbert, acting for Findley, brought his to the scene to swab and bail the well. As an accommodation to Gilbert, Langley allowed him to use the string of tubing he had in the well at that time; otherwise Gilbert would have had to use his own tubing in the process of swabbing.

"Gilbert began to swab the well on Monday, August 3rd, and continued thereat until about noon Wednesday, at which time, becoming dissatisfied with results, he decided to bail, which means the removal of water and mud. This is a well-recognized method of testing for oil and gas. His bailer was smaller than one owned by Langley and, at Langley's suggestion, his was substituted and used. Bailing was done Wednesday afternoon and to early afternoon of Thursday when the bailer stuck at

the bottom of the well. All efforts by Findley's men and machinery to extricate it failed. Gilbert then asked Langley to attach his machinery and give him a 'pull', which was done. However, the bailer remained stuck. The cable attached to it was left taut for the night in the hope that the steady 'pull' would disengage it from its fastening, but Friday morning brought no change in the situation. The double efforts of Thursday were resumed and continued until the cable broke. Gilbert then moved defendant's labor and machinery to the site of another well to 'pull' it. Langley and his men soon captured the broken line which had fallen down into the well. On being advised of this, Gilbert with men and machinery, returned to the scene and both machines were again employed in the resumed effort to pull the bailer out. The line again broke and again Gilbert with machinery and men went away to 'pull' another well, leaving Langley, his men and equipment engaged in trying to extricate the bailer. This continued to about noon of August 8th, when the derrick over the well, on account of excessive strain upon it, collapsed and fell upon Langley, killing him instantly."

In its analysis of the evidence, the Court of Appeal arrived at the conclusion that Langley assumed a responsibility that did not devolve upon him and elected to act in a manner all his own. It is stated in the opinion "[that Langley] volunteered to perform a task he was free to let alone."

From our appreciation of the facts in this case, the swabbing and bailing of the well formed no part of Langley's original con-

tract. It was Gilbert's duty to perform these tasks.

Mr. W. W. Findley, the owner of the well, testified that he knew nothing about the oil and gas business and had employed Gilbert to run the lease. He stated that he had not been on the leased premises. In other words, Gilbert was given complete authority by his principal to enter into any agreement or take any steps necessary to develop the premises. It was at Gilbert's request that the deceased assisted him in the swabbing and bailing operations. Langley, at no time, had control or supervision of these operations. He was merely called in to assist Gilbert. Although Gilbert left the premises at times, the evidence shows that Gilbert never relinquished supervision or control of the operations. He continued to discuss the methods to be used in these operations with Langley up to the time Langley met his death. He never indicated to Langley at any time that Langley was to perform the tasks on his own initiative. In fact, the method employed, which resulted in Langley's death, was discussed between Langley and Gilbert on the previous day, and they arrived at the conclusion that the derrick would withstand the strain contemplated in such operations.

It is contended that Langley was employed as an independent contractor to perform work cognate to that covered by his original contract and which might have been included in his original contract.

The Workmen's Compensation Statute defines an independent contractor as follows:

"The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished." Act 20 of 1914, sec. 3, subsec. 8; Act 38 of 1918, sec. 1; Act 85 of 1926, sec. 1; Dart's Louisiana General Statutes, No. 4393.

■ Langley was not employed as an independent contractor to swab and bail the well but was called in to assist in the operations. The control and supervision of the operations were solely under the direction of Gilbert. No agreement was made for the payment of any specified price for his work. He was not employed to perform any specified piece of work as a unit or as a whole. He could have quit the work at any time he saw fit, or he could have been discharged by Gilbert at any time.

■ From our appreciation of the Workmen's Compensation Statute and the numerous authorities cited by opposing counsel, the nature of the employment must be determined by the peculiar facts and circumstances of each case. Under the circumstances in this case, we agree with the conclusion reached by the Court of Appeal that Langley was not acting as an independent contractor in his efforts to extricate the bailer.

A review was granted in this case for the reason that we entertained serious doubts as to the correctness of the holding of the Court of Appeal that Langley was not an employee but a mere volunteer.

The evidence conclusively shows that the swabbing and bailing of the well formed no part of Langley's original contract. It was Gilbert's duty to swab and bail the well. Gilbert admits in his testimony that he requested Langley to assist him in his exertions to extricate the bailer from the bottom of the well. Although Gilbert was not present continuously throughout the time that Langley endeavored to extricate the bailer, he kept in touch with Langley. He returned on two occasions with his men and machinery and worked with Langley. He consulted with Langley on the day before Langley met his death as to the method to be used and agreed that the derrick would withstand the contemplated strain. At no time did he indicate to Langley that he desired that he desist in his efforts. In fact, his actions encouraged Langley to continue in his efforts to extricate the bailer. Langley did not volunteer to assist Gilbert but did so at Gilbert's request. Whatever the nature of Langley's employment was, it continued from the time he was first requested to assist Gilbert until he met his death.

It is suggested that Gilbert's action of moving his machinery to another well was an abandonment, and that Langley continued in his efforts on his own accord. Argument is presented to the effect that it was to Langley's interest to remove the bailer in order that he might complete his original contract.

We are not impressed with the suggestions for the reason that Langley only had a few feet to drill in order to complete his contract at the time it was agreed that the well should be swabbed and bailed. If Gilbert had abandoned his efforts to extricate the bailer, he would have made it impossible for Langley to complete his contract. If such had been the case, Langley would have had no reason to continue his efforts to retrieve the bailer because he could have recovered practically all if not all of the amount due under the contract. Moreover, the evidence does not show any intention on the part of Gilbert to abandon the works, but, on the other hand, that Gilbert continued to encourage Langley to pursue his efforts to retrieve the bailer. The swabbing and the bailing, under the facts in this case, were no part of the original contract.

The case of Hatten v. Haynes, 175 La. 743, 144 So. 483; Id., La.App., 142 So. 286, is not in point. In that case the plaintiff was an independent contractor and failed to complete his contract according to the plans and specifications. The plaintiff received his injury while correcting defects in the work called for in the original contract. We are presented with no such case herein.

There is no contention that Langley was a casual employee. However, if such a contention were advanced, it appears that our Workmen's Compensation Statute covers casual employment.

We have arrived at the conclusion that the facts in this case show an im-plied employment of Langley, and that the relation of employer-employee continued until Langley met his death.

For the reasons assigned, the judgment of the Court of Appeal for the Second Circuit is reversed and set aside, and it is now ordered that the judgment of the district court be reinstated at the cost of the defendants.