44 So.2d 487 (1950)
ALEXANDER
v.
J. E. HIXSON & SONS FUNERAL HOME et al.
No. 3217.
Court of Appeal of Louisiana, First Circuit.
February 17, 1950.
King, Anderson & Swift, Lake Charles, W. R. Jackson, Jr., Lake Charles, Thos. C. Hall, Lake Charles, for appellant.
Moss & Graham, Lake Charles, John R. Stewart, Lake Charles, for appellees.
FRUGE, Judge Ad Hoc.
Plaintiff instituted this suit against defendant, J. E. Hixson & Sons Funeral Home, as a partnership, against the partners individually and the funeral home's insurer, Continental Casualty Company under the Workmen's Compensation Act. Act No. 20 of 1914, as amended. After issue joined on merits, the District Judge decided in favor of defendants, rejecting plaintiff's demands at his costs. Plaintiff appeals.
Plaintiff alleges and contends that he was an employee of defendant and that on or about the 7th day of May, 1947, he was injured during the course of his employment while in the process of lifting a vault lid in a cemetery near Sulphur, Louisiana. He alleges that he ruptured himself in removing the vault lid and was temporarily totally disabled to do work for a period of 16 weeks. He alleges that he is entitled to receive compensation from defendants at the rate of $20.00 per week for the sixteen weeks and should be reimbursed for all medical expenses incurred in the treatment of said injury which are in the amount of $232.00.
The defendants admit that plaintiff was injured on May 16, 1947, and as a result of the injury he was temporarily and totally disabled to do work of any reasonable character for a period of sixteen weeks, but they deny that he was their employee.
The facts in this case are without dispute and these, material to the issue, are established as follows:
The plaintiff owned and operated a florist business in Sulphur, Louisiana. The defendant, J. E. Hixson & Sons, at the same time owned and operated a branch funeral home in the town of Sulphur, Louisiana, under the management of one James Young. About a year before plaintiff's injury, when Young ordered a casket spray from Alexander, the plaintiff, Alexander offered Young a percentage of the price in gratitude for the business. Instead, Young suggested that each man might help the other *488 in their business when not too occupied with their own. This arrangement continued up to the date of the injury to plaintiff. The evidence reveals that Alexander, the plaintiff, worked with Young in the preparation of funerals in that he did take ambulance trips, set up equipment for funerals, and did go to the cemetery to take vault lids off before the funeral services. On the other hand, Young, who had once been a florist, did help the plaintiff in the preparation of floral designs.
There is no question involved of the hazardous nature of the business and the question at issue is whether or not the plaintiff was, at the time of his injury, an employee of the defendant, J. E. Hixson & Sons Funeral Home.
The Louisiana Workmen's Compensation Act, as amended, Act. No. 20 of 1914, as amended, lays no specific definition of what constitutes an "employee", Section 1 of said act merely stating:
"2. Every person performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation in the following hazardous trades, businesses and occupations * * *." and thereafter listing the trades and occupations.
The general statement of the law defining the status of Employer-Employee, found in American Jurisprudence, Vol. 35, Sec. 3, p. 445, is to the effect:
The essence of the relationship is the right to control. The four primary evidentiary factors considered in deciding the above are
1. Selection and engagement.
2. Payment of wages.
3. Power of dismissal.
4. Power of control.
Taking up the above factors in chronological order, it appears from the evidence and the testimony of the plaintiff himself, that he and Young developed a working arrangement of mutual benefit to themselves in their complementary work, that there was no selection or engagement.
As to the second factor, the evidence clearly shows that Young and the plaintiff merely helped one another out when called upon and that no wages were ever discussed or contemplated. Plaintiff contends that it is not necessary that there be payment of wages in order that an employer-employee relationship exist and cites the following cases: Roush v. Heffelbower, 1932, 225 Mich. 664, 196 N.W. 185, 35 A.L.R. 196, Michigan Supreme Court; Schumacher v. Schumacher et al., 1939, 67 S.D. 46, 288 N.W. 796, Supreme Court, South Dakota; and Langley v. Findley et al., 1944, 207 La. 307, 21 So.2d 229.
Plaintiff also cites the following rules to support his contention, to-wit:
Horowitz (Samuel B. Horowitz-Injury and Death Under Workmen's Compensation Laws, pages 203-204) states the law as follows:
"Compensation is denied also to most persons who are mere volunteers, e.g. assist without pay or contract of hire, but an emergency or authority to hire help may make the "volunteer" an employee * * The absence of wages is no bar. Where the wage is not yet agreed on the law will imply a reasonable remuneration."
For the view in other states we further cite 28 R.C.L. 760:
"According to a rule of general recognition, a person who works for another of his own volition, without the knowledge or request of anyone in authority, cannot thereby establish the relation of employer and employee, so as to base any claim for damages on the duty owed by the employer to his employee. And this principle must hold true in respect of demands under the compensation acts. But one who actually performs services for another, at the instance of an accredited employee of the latter, is not to be deemed a volunteer, where it appears that the inducing employee was clothed with actual authority to engage assistance, or where there existed an emergency from which the law implies an authority to secure the help of other persons. Accordingly, the driver of a team who, at the request of one whose team had become mired and unable to draw out its load, hitches his team to the wagon in an attempt to get the same out of the mud, and is injured, *489 is held to be entitled to compensation from the owner of the team that was mired, since the driver of that team had implied authority to employ the necessary assistance to extricate his team."
However, in the case at hand the arrangement between Young and Alexander continued for over a year, during which time Alexander neither received nor requested wages or compensation of any kind. It was a reciprocal good fellowship agreement for mutual benefit. In most of the cases cited by plaintiff where no definite wage was agreed upon the injury occurred a very short time after employment, and consequently the court held that wages is no bar, but in this case, as stated, the arrangement between Young and Alexander had continued for over a year.
Further, Subdivision 3, Section 8 of the Compensation Act, as amended, Act No. 120 of 1944, provides:
"The term `wages' as used in this act is defined to mean the daily rate of pay at which the service rendered by the injured employee is recompensed under the contract of hiring in force at the time of the injury, and anything herein contained to the contrary notwithstanding the maximum compensation to be paid under this act, shall be twenty dollars per week and the minimum compensation shall be three dollars per week; provided that if at the time of the injury the employee was receiving wages at the rate of three dollars or less per week, then compensation shall be full wages."
The act thus contemplates a contract of employment whereby the employee and employer agree on a fixed wage in order that the court may properly determine the amount of compensation due the employee in case of injury while in the course of employment.
Alexander testified that he only helped Young when he had sold flowers for the funeral. Such services he performed for Young were in return for Young keeping his, Alexander's, shop whenever he was away from Sulphur.
Taking the third and fourth factor, namely the "Power of Dismissal" and the "Power of Control" together, the court thinks that these factors were not present in this case. The evidence clearly shows that Alexander was not under any obligation to help the defendant's manager with the preparation of funerals. In fact, on many occasions he did not help Young and was free to go and return as he saw fit. The fact that he did not help Young every time he was called upon reveals that their agreement was one based on cooperative friendship. Young never had the authority, nor did he ever try to exert any power of control over the plaintiff.
The evidence further showed that the defendant, J. E. Hixson & Sons Funeral Home never did carry plaintiff on its books as being in its employ; that the plaintiff never did receive any money of any nature from Hixson; that further, although it did report and make a list of employees, which it reported to its Insurance Carrier, the name of the plaintiff was omitted even though this agreement between Young and the plaintiff had existed over a year.
For reasons assigned the Judgment is affirmed.
ELLIS, Judge (dissenting).
As stated in the majority opinion, the only question at issue is whether the plaintiff was, at the time of his injury, an employee of the defendant company, J. E. Hixon & Sons Funeral Home. Also stated in the majority opinion is the general statement of the law defining the status of the employer-employee as found in American Jurisprudence, Vol. 35, Sec. 3, Pg. 445 to the effect:
The essence of the relationship is the right to control. The four primary evidentiary factors considered in deciding the above are
1. Selection and engagement.
2. Payment of wages.
3. Power of dismissal.
4. Power of control.
I am of the opinion that under the facts in this case all four factors are present.
*490 The plaintiff owned and operated a florist business in Sulphur, Louisiana, and the defendant, J. E. Hixson & Sons, at the same time owned and operated a branch funeral home under the management of James Young, who had formerly owned a floral shop and was experienced in that type of business. There is no dispute that Young had authority to engage the necessary employees to carry on the business of the defendant. On cross examination, Young testified as follows:
"Q. You mention that you had an agreement with Mr. Alexander. Wasn't that something that just worked itself out as you worked over here in Sulphur? A. No it didn't because when I first moved over there a family asked me to order a casket spray. I ordered it from him. He came down and offered me twenty per cent of the amount he received for the spray. I believe it was a $50.00 casket spray. I told him then, `Bruce, I don't give you twenty per cent of my salary but I would like to make an agreement with you that I will work with you if you will work with me when we need help.' (Emphasis mine.)
"Q. I believe you stated that either of you would call the other and find out if he was busy and if not the one would help the one who would call? A. We helped each other when we were busy. * * *"
It is further shown by the testimony that the plaintiff accepted Young's proposition to work for the defendant when it needed help and he was to receive in return the services of defendant's manager in his floral shop when needed. Plaintiff attended approximately 95% of the funerals handled by the defendant from the date of the agreement until he was injured. On the day that plaintiff was injured as a result of lifting a vault lid he had been called by Young, defendant's manager, to come and assist in that particular funeral.
Plaintiff, also, during the same period, drove the ambulance of the defendant, answered emergency calls, picked up bodies and, in general, performed any duties in connection with the defendant's business when called upon by its manager. It is shown by the record that the value of the services which the plaintiff rendered were worth $10.00 per day. All of this was done by plaintiff with the knowledge of the owners of the defendant company.
There is no dispute that the plaintiff became a trained assistant funeral director, in fact, the testimony of Young, the manager of the funeral home, was:
"In other words, he (plaintiff) was just like an employee there. In fact, when I first went over there (Sulphur, La.), he wasn't what I consideredand you know every undertaker has a way of doing things and I trained him the way I wanted him and he was a lot of help on funeral." (Emphasis added.)
Naturally, it was the duty and desire of the manager of the defendant company to carry on its business as economically as possible and that is what he did in this instance by selecting and engaging the plaintiff to work for the defendant without the payment of any money as wages. The duties which the plaintiff was called upon to perform were all in connection with the defendant's business. I am, therefore, of the opinion that the plaintiff was selected and engaged to work for the defendant.
As to the payment of wages, it is true that he received no money and none was intended to be paid to him, but he received valuable services from the manager of the defendant company. The nature of defendant's business was such that its manager of necessity had to be on duty at all times, night and day, and when he worked for the plaintiff in his floral shop he was doing so on the time of the defendant company. There is no dispute that he had authority to employ the plaintiff and it follows that he would have had authority to pay plaintiff wages or to pay him anything else which the plaintiff was willing to accept. In the present case, the plaintiff at times needed help in his floral business and he, therefore, accepted as wages the services of the defendant's manager. Cash wages are not necessary. Langley v. Findley et al., 1944, 207 La. 307, 21 So.2d 229; Roush v. Heffelbower, 1932, 225 Mich. 664, 196. N.W. 185, 35 A.L.R. 196; Schumacher v. *491 Schumacher et al., 1939, 67 S.D. 46, 288 N.W. 796.
Horowitz (Samuel B. Horowitz-Injury and Death under Workmen's Compensation Laws, pages 203, 205) states the law as follows:
"Compensation is denied also to most persons who are mere volunteers, E. G. assist without pay or contract of hire, but an emergency or authority to hire help may make the `volunteer' an employee. * * * The absence of wages is no bar. Where the wage is not yet agreed on the law will imply a reasonable remuneration."
For the view in other states we further cite 28 R.C.L. 760:
"According to a rule of general recognition, a person who works for another of his own volition, without the knowledge or request of anyone in authority, cannot thereby establish the relation of employer and employee, so as to base any claim for damages on the duty owned by the employer to his employee. And this principle must hold true in respect of demands under the compensation acts. But one who actually performs services for another, at the instance of an accredited employee of the latter, is not to be deemed a volunteer, where it appears that the inducing employee was clothed with actual authority to engage assistance, or where there existed an emergency from which the law implies an authority to secure the help of other persons. Accordingly, the driver of a team who, at the request of one whose team had become mired and unable to draw out its load, hitches his team to the wagon in an attempt to get the same out of the mud, and is injured, is held to be entitled to compensation from the owner of the team that was mired, since the driver of that team had implied authority to employ the necessary assistance to extricate his team."
In the present case, the plaintiff was not working for the defendant without its knowledge or without the request of anyone in authority. He was engaged to work for the defendant by its manager and performed his duties with the full knowledge of the defendant. He actually performed services for the defendant for which he did not receive any monied compensation but he agreed to accept and did receive the services of the manager of the defendant as compensation for his services to the defendant.
The Court, in the case of Smith v. Jones, 1925, 102 Conn. 471, 129 A. 50, 51, 43 A.L.R. 952 stated:
"This appeal relates to certain claimed errors of the trial court in failing to hold, from the subordinate facts found by the commissioner:
"(1) That plaintiff had no contract of employment with the defendant Jones, and that the relation of employer and employee did not exist between them, and hence that they were not subject to the Compensation Act. * * *;
"(2) That the parties (Smith and Jones) were engaged in a joint enterprise as to which no relation of employer and employee arose. * * *"
"The subordinate facts, as found by the commissioner, are that Smith (the claimant) and Jones were dairy farmers owning adjoining farms; that both used silos to store food for their cattle."

* * * * * *
"By mutual agreement between Mr. Smith and Mr. Jones they assisted each other in filling silos and icehouses. In the season of 1923 Mr. Jones' ensilage corn was farther advanced and matured than that of Smith, and it was accordingly arranged that Jones' silo should be filled first."

* * * * * *
"During all the time that the claimant was engaged in this work for the respondent, the respondent directed his activities, told him what to do and when to stop. The plaintiff was engaged in running the mechanical operation."

* * * * * *
"(2) The question presented is whether the finding as to the mutual agreement of Smith and Jones, that they should assist each other in filling silos and icehouses, coupled with the work done by Smith in pursuance of this agreement, is a basis for a logical and legal conclusion that there was a contract of service and employment between them when the injury occurred. *492 They had agreed to assist each other to fill their respective silos, their compensation for working one for the other was work to be done by the other. These were mutual agreements creating a valid contract for service, and enforceable at law in case of a breach. The fact that the services were to be compensated for by labor and not money does not make the agreement any the less a contract for service."
"The Compensation Act (Gen.St. 1918, § 5388) defines an employer as `any person, corporation, firm * * * using the services of another for pay.' Pay here means compensation. Aisenberg v. Adams Co., 95 Conn. [419], 423, 111 A. 591; Roush v. Heffelbower, 225 Mich. 664, 196 N.W. 185, [135 A.L.R. 196]."
"The respondents claim that the only conclusion legally and logically to be drawn from the mutual agreement of the parties is that of a joint enterprise entered upon which did not create the relation of employer and employee, or a social affair in the nature of a social barn raising or corn husking. Joint enterprise, as used by the appellant, means something in the nature of a partnership."
"The agreement between Smith and Jones was not in the nature of a partnership or one made for social diversion. It was on agreement for employing service, compensation to be made by similar service. * * *"
"There is no error."
"All concur."
We have the same situation in the case at bar and I believe that as in that case so it is in the present case, "an agreement for employing service, compensation to be made by similar service."
The majority opinion states that they do not believe that the third and fourth factors, viz: the "power of dismissal" and the "power of control" were present in this case for "Alexander was not under any obligation to help the defendant's manager with the preparation of funerals." It appears to me that Alexander was under the same obligation to perform the duties he had agreed upon, one of which was to help with the preparation of funerals as any ordinary employee, drawing cash wages would have been. It is argued that "on many occasions he did not help Young and was free to go and return as he saw fit. The fact that he did not help Young every time he was called upon reveals that their agreement was one based on cooperative friendship.'" I do not think that plaintiff was free to go and return as he saw fit any more than any ordinary employee. The same thing could happen to the plaintiff if he refused to perform the agreed duties as could happen to any employee who was being compensated by cash wages. The ordinary employee could be dismissed and the plaintiff could have been dismissed and would have suffered the loss of the services of defendant's manager which was the compensation agreed upon. The plaintiff assisted in 95% of the funerals, and the mere fact that he did not assist in the other 5%, even if he was called upon, is not, to my mind, proof that the agreement was one based on "cooperative friendship." Any ordinary employee could have done the same, that is, told the defendant, "I am not going to work today," and the only thing the defendant could do would be to dismiss the employee for refusing the come to work. He could have done the same thing to plaintiff.
The majority opinion disposes of the fourth factor, "power of control" with the statement: "Young never had the authority, nor did he ever try to assert any power or control over the plaintiff." Young testified that he had the power of control over the plaintiff and it is proven that he did by reason of the fact that he trained this man so that he became an expert in the line of business of the defendant. Young stated in effect that the plaintiff knew nothing about the funeral business at the time he was employed, and he could not have taught him unless he had exercised the power of control and direction. Young, in my opinion, had the right to control in the sense necessary to constitute the fourth factor. The fact that the defendant did not carry the plaintiff on its books as being in its employ, nor pay him any money as wages nor report his name to its insurance carrier as an employee does not alter the fact that he was an employee under the proven facts and the law and jurisprudence applicable thereto.
For these reasons I respectfully dissent.