## LINDROTH v. RIAL.

Industrial Commission.

March 3, 1954.

Joseph A. Peel, Jr., West Palm Beach, for claimant.

James C. Paine of Earnest, Lewis, Smith & Jones, West Palm Beach, for employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

On the morning of July 16, 1952, Leo A. Lindroth visited the Beachcomber Restaurant in Palm Beach Shores, as a customer, and ordered his usual breakfast, consisting of coffee and rolls. While he was eating, Roy Rials, the owner of the restaurant, approached him and a friend who was seated with him and asked their assistance in moving some restaurant tables, offering, in return, to "buy" their breakfast for them. Lindroth acceded to Rials' request, and, with his companion, proceeded to move certain tables. In the process of doing so, he slipped and sustained a ruptured intervertebral disc, the symptoms of which appeared immediately. He discontinued his efforts in moving tables, and offered 16 cents to a restaurant employee in payment for the regular price of his breakfast. The employee declined his offer to pay, pursuant to instructions from Rials, who had said, "Let the boys have what they want. It's on me."

A corrective operation was performed for Lindroth's back condition on August 29, 1952, by Dr. Raymond S. Roy. Lindroth was temporarily totally disabled by his injury from the time of its occurrence until January 1, 1953.

Lindroth claims the benefits of the workmen's compensation act in this proceeding. Rials' compensation insurance carrier denies liability on the ground that the claimant was not an "employee" at the time of his injury. In addition, the carrier denies liability for all medical benefits, specifically on the ground that medical reports regarding the claimant's injury and treatment were not furnished to the employer or carrier within twenty days, as required by the Act. The claimant concedes that such reports were not submitted for more than one year after the completion of the medical treatment.

The claimant at the time of his injury was, and still is, the operator of an independent beach concession business, located near the Beachcomber Restaurant. His average weekly earnings in that business were about $62.50, at the time of his injury.

Section 440.02 (2), Florida Statutes 1953, defines an "employee" as follows—

> The term "employee" means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, including aliens, and also including minors, whether lawfully or unlawfully employed, but excluding independent contractors and excluding persons whose employment is both casual and not in the course of the trade, business, profession or occupation of his employer.

Section 440.02 (3) provides—

> The term "casual" as used in this section shall be taken to refer only to employments where the work contemplated is to be completed in not exceeding 10 working days, without regard to the number of men employed, and where the total labor cost of such work is less than $100.00.

The question presented for determination relates to whether Lindroth, in moving the restaurant tables at the time of his injury, was engaged in an "employment" under a contract of hire, expressed or implied. If so, the fact that the employment may have been "casual" would not exclude the claimant from the Act, since the work of moving the tables was concededly within the course of the trade or business of the restaurant owner, Rials. There can be no compensation liability in the absence of an "appointment or contract of hire" between the alleged employee and the alleged employer. Did Lindroth make a contract of hire with Rials?

A consideration of the problem leads to the conclusion that Lindroth's free breakfast should be viewed as more in the nature of a gratuity, or gift, than as constituting the equivalent of wages, particularly in view of the fact that as a frequent customer of the restaurant, Lindroth might naturally have been expected to "lend a hand" if it was needed for some particular little task, and equally natural for the restaurant owner, a friendly acquaintance, to reward him for his assistance in the manner done in this case, without any understanding between the parties that such reward would constitute the equivalent of wages. The situation also suggests application of the principles governing a relationship in which informal reciprocal services are rendered by the parties for each other, where it is commonly held that no contract of hire exists. An example of this type of case is Alexander v. Hixson & Sons Funeral Home (La.), 44 So. 2d 487, in which a florist and an undertaker agreed to work for each other whenever they had time.

After the arrangement had been in force for about a year, the florist was injured while removing a vault lid. Compensation was denied, on the ground that the relationship was a "reciprocal good fellowship arrangement for mutual benefit."

It is evident that a conclusion confirming the existence of an implied contract of hire in borderline cases should be approached with caution, since the "employee" loses certain rights along with those he gains when he strikes up a new employment relation. Thus, he loses the right to sue the so-called employer at common law for negligence, and as pointed out by Larson in his recent treatise on Workmen's Compensation Law, section 48.10, in commenting on a related problem, when the question has been presented in this form, "the courts have been very vigilant in insisting upon a showing of a deliberate and informed consent by the employee before employment relation will be held a bar to common law suit." It seems reasonable to suppose, in the present case, that had the claimant's injury been occasioned through the negligence of Rials, he would likely have claimed damages at common law, since his recovery might have been greater than the benefits afforded by the Act. It seems extremely dubious that the court in such a case would hold that he was an "employee" and thus unable to maintain his suit. Negligence on Rials' part not being evident, the opposite theory has been advanced by the claimant. But the principle remains the same, that in such a case, to protect the rights of the so-called employee, as well as those of the alleged employer, there must be a showing of "a deliberate and informed consent" to the employment relation by the alleged employee. The facts in the present case do not sustain the conclusion that such consent existed. For the reasons given, the claim is denied.