ELEAZAR RIVERA SALGADO

VERSUS

TRI-PARISH ROOFING & HOME
IMPROVEMENTS

NO. 19-CA-407

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION,
DISTRICT 7
STATE OF LOUISIANA
NO. 17-6294
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

May 27, 2020

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg

**AFFIRMED**
 **RAC**
 **MEJ**
 **HJL**

COUNSEL FOR PLAINTIFF/APPELLEE,
ELEAZAR RIVERA SALGADO
    J. Casey Cowley
    Pamela C. McLendon
    Ana Mafalda Morgado Rodrigues

COUNSEL FOR DEFENDANT/APPELLANT,
TRI-PARISH ROOFING & HOME IMPROVEMENTS
    Laurie W. Maschek

**CHAISSON, J.**

In this workers' compensation case arising from a construction-site accident, employer Tri-Parish Roofing and Home Improvement, LLC ("Tri-Parish"), appeals a June 13, 2019 judgment of the Office of Workers' Compensation rendered in favor of the claimant, Eleazar Rivera Salgado. For the following reasons, we affirm the judgment.

FACTS & PROCEDURAL HISTORY

On October 5, 2017, Mr. Salgado filed a disputed claim for compensation with the Office of Workers' Compensation wherein he alleged that, on August 23, 2017, while employed as a roofer for Tri-Parish, he fell while descending a ladder. Other workers on-site witnessed the accident. Mr. Salgado remained at an apartment near the construction site provided by Tri-Parish for three days, until August 26, 2017, when he was taken to University Medical Center where he was diagnosed with a distal tibial fracture of his left ankle and given a boot cast and crutches before being discharged. Tri-Parish did not provide any assistance or compensation at that time.

In its answer to the disputed claim for compensation, Tri-Parish denied all of Mr. Salgado's allegations, and in particular denied that Mr. Salgado was ever employed by Tri-Parish or that he was injured. Tri-Parish also claimed that it had no knowledge of Mr. Salgado's claim and had no knowledge of Mr. Salgado's identity before the disputed claim for compensation was filed.

Following a March 18, 2019 trial on the merits, during which the court heard testimony from both Mr. Salgado and James Dinger, the owner of Tri-Parish, the court issued a judgment wherein it found: Mr. Salgado met his burden to show that he was an employee of Tri-Parish at the time of the work accident; Mr. Salgado did in fact sustain an on-the-job injury on August 23, 2017; Mr. Salgado sustained injuries related to his work accident; and, Mr. Salgado was unable to work as a

result of injuries sustained in the work accident.  In addition to ordering Tri-Parish to pay temporary total disability (TTD) benefits and medical bills and expenses, the judge also assessed penalties in the amount of $8,000 for Tri-Parish's arbitrary and capricious conduct in its failure to pay benefits or medical expenses and failure to authorize medical care.

On appeal, Tri-Parish raises the following assignments of error:

1.  The trial court erred when it determined that Tri-Parish was the direct employer of Mr. Salgado.

2.  The trial court erred when it ruled that Mr. Salgado sustained his burden of proof regarding employment status, disability, and entitlement to benefits.

3.  The trial court erred when it awarded unreasonable penalties and attorney's fees.

DISCUSSION

We consider first Tri-Parish's argument that the trial court erred when it determined the existence of an employment relationship between Mr. Salgado and Tri-Parish.  The finding of such a relationship is a question of fact which is subject to the manifest error standard of review upon appeal.  *Villatoro v. Deep S. BH & R Enterprises, LLC*, 16-307 (La. App. 5 Cir. 12/7/16), 206 So.3d 428, 434, *writ denied*, 17-0036 (La. 2/10/17).  However, Tri-Parish argues that the trial court's factual determination was the result of legal error, and therefore this court should apply a *de novo* standard of review rather than the manifest error standard of review.  *See MacFarlane v. Schneider Nat. Bulk Carriers, Inc.*, 07-1386 (La. App. 4 Cir. 4/30/08), 984 So.2d 185, 188.

Tri-Parish argues that there was no employment relationship between Tri-Parish and Mr. Salgado, but rather that Mr. Salgado was an independent contractor under the four part test set forth in *Alexander v. J. E. Hixson & Sons Funeral Home*, 44 So.2d 487, 488 (La. App. 1st Cir. 1950), which states that selection and engagement, payment of wages, power of dismissal, and power of control are

evidentiary factors for a court to consider when determining the right to control in an employment relationship. Tri-Parish, however, fails to acknowledge La. R.S. 23:1044, the provision of the Workers' Compensation Act which creates a rebuttable presumption of employee status for any person rendering service for another in any trades, businesses or occupations covered by the Act. This statutory presumption is the sole statutory provision on the subject of what constitutes an employer-employee relationship. *Hillman v. Comm-Care, Inc.*, 01-1140 (La. 1/15/02), 805 So.2d 1157, 1161. An alleged employer can rebut this presumption by either (i) establishing that the services were not pursuant to any trade, business, or occupation, or (ii) establishing that the individual was performing services but doing so as an independent contractor. *Id*. The factors articulated in the *Alexander* test are illustrative but not controlling, and the trial court must consider the totality of the circumstances in determining the nature of the employment relationship. *Id*. The trial judge was correct in expressly relying on the presumption contained in La. R.S. 23:1044 and therefore her determination that there existed an employment relationship between Tri-Parish and Mr. Salgado must be examined under the manifest error standard of review.

It is well settled that a court of appeal may not set aside a trial court's findings of fact in the absence of manifest error, or unless it is clearly wrong, and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Glob. Constr. & Equip., L.L.C. v. Rathborne Properties, L.L.C.*, 18-169 (La. App. 5 Cir. 5/29/19), 274 So.3d 837, (citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). At trial, the trial judge considered the written affidavit of Mr. Salgado stating that he was employed by Tri-Parish on August 23, 2017, and was injured on the job that day, that he was given a Tri-Parish roofing shirt to wear while working, and

that he was paid in cash by Tri-Parish.  The judge also heard live testimony from Mr. Salgado and Mr. Dinger.

Mr. Salgado testified that he was paid $100 a day in cash to work six days a week as a roofer on a construction site in Alexandria by Daniel Saguesteumi, who was handed the money by Mr. Dinger, the owner of Tri-Parish, and who was known on the construction site as "Steven."  A taxi was sent to bring Mr. Salgado and other workers from New Orleans to an apartment in Alexandria where they stayed a few weeks for the duration of the job.  Mr. Dinger and Mr. Saguesteumi were present at the apartment when Mr. Salgado arrived.  They gave Mr. Salgado and other workers t-shirts with the Tri-Parish logo to wear while working.  Mr. Dinger drove Mr. Salgado and the other workers from the apartment to the jobsite in a company car marked with Tri-Parish on the side.  Mr. Salgado saw Mr. Dinger bring materials to the jobsite; also, on the day of the accident, he bought everyone on the jobsite hamburgers.  Mr. Salgado testified that he fell from a ladder on the jobsite and that Mr. Dinger was present at the jobsite when the accident occurred. Mr. Salgado requested to be taken to the hospital, but was told he had just a little injury and that he would be fine.  Mr. Salgado waited in pain at the jobsite without medical care for hours while the other employees finished their job before being taken back to the apartment.  He stayed in the apartment room, abandoned, for three days with no food or pain medication until his sister arranged a ride for him back to New Orleans on August 26th.  He went straight to University Medical Center where he was x-rayed and shown images of two fractures in his left leg before placing the leg in a cast, which remained on for about five months.  Mr. Salgado testified that he went to the doctor a few times in the next few months. He was referred to an orthopedic specialist, but never went to see the specialist because he did not have the money.  He did not work the entire five months his leg was in a cast, and he testified to continuing pain following the removal of the cast.

He eventually worked again as a painter a few months after the removal of his cast, and he testified at the time of the trial that he was currently working in construction.

Mr. Dinger testified that he recognized Mr. Salgado from one of his jobsites as an employee of Mr. Saguesteumi, who Mr. Dinger hired as a subcontractor for Tri-Parish. Mr. Dinger wrote checks to Mr. Saguesteumi. He did not sign a contract with Mr. Saguesteumi.[1] Mr. Dinger was present at the jobsite and recognized Mr. Salgado as the man he saw on the ground on the day of the injury. Mr. Dinger required his subcontractors to wear company t-shirts while on the jobsite for advertisement and he did not allow anyone else to advertise on his jobsites. Mr. Dinger found out after the accident that he did not have workers' compensation insurance. He testified that he saw Mr. Saguesteumi speaking to an injured Mr. Salgado at the jobsite, but Mr. Salgado was not taken to the hospital and the workers finished out the rest of the day. Mr. Dinger testified that he set up the apartment for Mr. Saguesteumi. Mr. Dinger has not hired Mr. Saguesteumi since 2017 and does not have his phone number.

Also entered into evidence were medical records from University Medical Center indicating that on August 26, 2017, Mr. Salgado was admitted for emergency care and, after x-rays, was diagnosed with a fractured tibia and placed in a cast. Medical records from another healthcare provider, LA Health Solutions, indicate that Mr. Salgado was again examined and found to have a tibial fracture, and the treating physician recommended that he do no work until cleared by an orthopedist. That physician wrote a referral for an orthopedic evaluation, but the evaluation required a $500 deposit for initial consultation and evaluation.

---

[1] No documentary evidence of the relationship between Mr. Dinger and Mr. Saguesteumi was introduced at trial.

We find that the evidence in the record supports the trial court's factual finding that Mr. Salgado was employed by Tri-Parish, and that Tri-Parish failed to overcome the presumption of employment. Though Mr. Dinger claimed that Mr. Salgado was an employee of Mr. Saguesteumi, who was in turn a subcontractor for Tri-Parish, no documentary evidence of such a relationship was introduced, and the trial judge did not find Mr. Dinger's testimony regarding the subcontractor relationship credible in light of the other evidence presented. This assignment of error is without merit.

We turn next to Tri-Parish's second assignment of error concerning whether Mr. Salgado met his burden of proof regarding his employment status, his disability, and his entitlement to benefits. In a workers' compensation case, the employee bears the burden of proving by a preponderance of the evidence that an accident occurred, it occurred in the course and scope of his employment, the accident caused his injury, and the injury caused his disability. *Miken Specialties v. Abarca*, 16-231 (La. App. 5 Cir. 12/7/16), 209 So.3d 268, 272. A worker's testimony alone may be sufficient to discharge this burden of proof in situations where no other evidence discredits or casts serious doubt upon the worker's version of the incident, and the worker's testimony is corroborated by the circumstances following the alleged incident. *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 361 (La. 1992). Such corroboration may be provided by medical evidence. *Id*. The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Id*.

Mr. Salgado testified that he was working for Tri-Parish on August 23, 2017, as a roofer at a construction site when he fell from a ladder and was injured. The medical records from University Medical Center indicate that Mr. Salgado told

doctors there he injured his left ankle when he fell from a ladder. The medical records from LA Health Systems indicate that the treating physician there believed Mr. Salgado's left ankle injury to be consistent with and caused by the reported fall from a ladder. Mr. Salgado testified that he was placed in a cast and unable to work for at least five months; the medical records state he was placed in a cast and was told by at least one physician not to work until cleared by an orthopedist. Mr. Dinger appears to have chiefly contested only Mr. Salgado's status as an employee, while his own testimony seems to corroborate Mr. Salgado's story of being injured on the jobsite, including the testimony by Mr. Dinger that he recognized Mr. Salgado from the jobsite and was aware of an accident on-site that day. We find no manifest error in the trial court's factual findings in this regard. This assignment of error is without merit.

In its final assignment of error, Tri-Parish raises as error the trial court's award of penalties and attorney's fees. Awards of penalties and attorney's fees in workers' compensation cases are essentially penal in nature, being imposed to discourage indifference and undesirable conduct by employers and insurers. *Stretzinger v. Claims Mgmt., Inc.*, 19-168 (La. App. 5 Cir. 12/11/19), 285 So.3d 591, 599 (citing *Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41, 46). The workers' compensation judge has great discretion in the award of penalties and attorney's fees and such discretion will not be disturbed on appeal unless clearly wrong. *Villatoro*, 206 So.3d at 437. La. R.S. 23:1201 imposes a twofold continuing obligation on the employer: (1) to pay all compensation and medical benefits due, and (2) to pay for compensation and medical benefits within the time limit specified. *Stretzinger*, 285 So.3d at 600. An employer may make multiple errors in this regard and be subject to two or more claims under La. R.S. 23:1201(F). *Id.* In those instances where a claim is not reasonably controverted or if nonpayment results from conditions under the control of the employer, allowing

for multiple penalties addresses the recalcitrant employer and encourages employers and their workers' compensation insurers to honor their continuing obligation to the injured worker. *Id.* In order to reasonably controvert a claim, the employer must have some valid reason or evidence upon which to base the denial of benefits. Tri-Parish does not dispute that it has not paid any of Mr. Salgado's medical bills, has not authorized any medical care, and has not investigated the claim. If the trial court credited Mr. Salgado's testimony that he asked to be taken to the hospital upon being injured, only to be refused and left in pain for days while workers were instructed to continue working at the jobsite, this is certainly the kind of indifference and undesirable conduct by an employer that penalties are meant to discourage. Additionally, in his initial response to the claim for compensation, Mr. Dinger claimed to have no knowledge of Mr. Salgado or the accident, an assertion that was directly contradicted by his own testimony on the stand in favor of a more nuanced argument concerning employment status. The trial court found that Tri-Parish provided no valid reason for the denial of benefits and acted arbitrarily and capriciously in the denial of Mr. Salgado's claim. We find no error in this ruling, and affirm that portion of the judgment.

Finally, Tri-Parish argues for the first time in this appeal that the trial court's judgment is indeterminate in that it specifies that Tri-Parish shall pay Mr. Salgado TTD benefits from the date of the accident through such time as he was released from an orthopedist or when he returned to work voluntarily. Mr. Salgado testified that he voluntarily returned to work a few months after the removal of his cast and that, as of the date of the trial in March 2019, he had returned to work in construction. We find no merit to Tri-Parish's assertion that the trial court's judgment is indeterminate.

CONCLUSION

For the foregoing reasons, we find no merit to Tri-Parish's assignments of error and therefore affirm the judgment of the trial court in Mr. Salgado's favor. All costs of this appeal are assessed to Tri-Parish.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MAY 27, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-407

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
ANA MAFALDA MORGADO RODRIGUES
(APPELLEE)

**MAILED**
LAURIE W. MASCHEK (ATTORNEY)
1350 GAUSE BOULEVARD WEST
SLIDELL, LA 70460

J. CASEY COWLEY (ATTORNEY)
PAMELA C. MCLENDON (ATTORNEY)
620 NORTH CARROLLTON AVENUE
NEW ORLEANS, LA 70119