CHARLES J. RIVET, Judge ad hoc.
Plaintiff appealed from a judgment denying him workmen’s compensation for permanent and total disability.
On May 9, 1958, while he was engaged in hazardous employment as a freight handler a heavy bale of pulpwood fell upon his right foot causing fractures in the great and second toes.
He received compensation of $35 per week from May 9 to September 30, 1958. Medical expenses of $237.56 were also paid.
Following the accident he was first treated by a general surgeon acting on behalf of the employer’s insurer, who discharged him on July 8, 1958, as capable to resume the work he performed before the accident. Plaintiff attempted to return to his duties but was unable to perform them, whereupon he was sent by his employer’s insurer to another general surgeon who after infrared heat treatments for several days discharged him on July 14, 1958, as able to go back to his regular work.
Again, plaintiff complained of inability to perform his usual duties, and on the suggestion of his then counsel he visited an orthopedic specialist on July 14, 1958. The latter took X-rays which disclosed that the fractures in both toes were not completely united, and though healing were not really well-healed. He was of the opinion that *538 plaintiff was unable to resume his usual work at that time. He fitted the patient with a metatarsal bar and prescribed exercises to limber up the joint. He saw the patient at approximately weekly intervals thereafter until September 22, 1958, on which last date he concluded that plaintiff had no measurable residual disability in his foot as a result of the injury, and had recovered sufficiently to return to his work as freight-handler, wearing his usual work shoes without the metatarsal bar. He gave plaintiff a note stating the latter could return to work on September 29, in order to give him a few days to get lined up for it. He saw the plaintiff for the last time on December 4, 1958. The plaintiff then stated that he had not been doing well, that he had tried to work three or four times, had worked until noon on one occasion and about an hour on two or three other occasions; that his leg felt weak and he had pain in the calf when he walked and his big toe hurt all the time; that the calf of his leg hurt occasionally at night. He denied symptoms in other areas than the toe and right leg, and stated that he did not feel appreciably better than before the doctor had started to treat him. Clinical examination disclosed that the patient walked without a limp, could walk on his toes and on his heels, had full range of motion in the right ankle and in all of the joints of the right foot including the toes. X-rays taken at the request of another doctor showed very good healing of the fractures, normal bones as to density, no osteoporosis of the bone, no complications or arthritic changes. With full understanding of the arduous nature of the work of a freight handler, this surgeon was definite and adamant in his testimony that in December he saw no reason why plaintiff could not work as well as anyone could who had not broken his toe.
Two other orthopedists, one chosen by the insurer and the other by plaintiff, testified as to his condition.
The first examined plaintiff on November 25, 1958, and found no residual disability in reference to the injury. He knew of no reason why plaintiff should not be perfectly capable of doing again the work he had performed as a freight handler. The injuries were healed, the plaintiff was without orthopedic disability relative to the injuries sustained, and should be able to continue the activities he performed prior to the injury.
The orthopedist chosen by plaintiff examined him on October 17, 1958, and January 23, 1959, and viewed his foot during the trial in the lower court. He found the fractures healed, but nevertheless expressed the opinion that plaintiff presented sufficient unfavorable and convincing facts to make the diagnosis of a permanent total disability rather sure. In his opinion plaintiff was unable to go back to work as a freight handler. Later in his testimony he stated that he could not then definitely say that the plaintiff was permanently disabled. His examination in court revealed to him a visible loss of the normal outline of the great toe and soft tissue, thickening and induration, but not pronounced.
Plaintiff testified that he was 38 years old, 5 feet 7 inches tall, and weighed between 143 and 145 pounds; that he had been working steadily as a freight handler for the same employer for better than 6 years before the accident. After September 29, 1958, he tried to resume his work but his foot would swell. On the day he testified he said he could walk and thought he could work, but it hurt and he has swelling at night. He was then engaged in doing janitor work at $20 per week, whereas as a freight handler his average take home pay was from $65 to $100 a week, sometimes better. He asserted that he had pains all the time, but not as bad as 4 or 5 months ago.
It is difficult to reconcile plaintiff’s subjective testimony with that of the medical experts.
We do not disagree with the principles set out in Powell v. Travelers Insurance Co., La.App., 117 So.2d 610, upon which plaintiff relies, but each case must depend *539 upon its own facts on the question of total permanent disability vel non, which depend largely upon the findings of medical experts.
Under the facts of this case we are unable to find that plaintiff was disabled, after September 28, 1958, from performing work ■of any reasonable character similar to that which he was performing on May 9, 1958. A contrary conclusion would require complete rejection of the preponderance of •medical opinion. Plaintiff has failed to point to any sound basis upon which such rejection can be justified.
The judgment appealed from is affirmed.
Affirmed.
JANVIER, J., absent, takes no part.